## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| Casey M. White and Patricia A. Crimmins<br><br>    Plaintiffs,<br><br>    v.<br><br>GM Law Firm, LLC; Chantel L. Grant; National Legal Staffing Support, LLC; Gregory Fishman; Julie Queler; Kevin Mason; Resolvly, LLC; JG Factor, LLC; P. Benjamin Zuckerman; Berger Singerman, LLP; and John and Jane Does Defendants 1-5.<br><br>    Defendants. | Civil Action No. 1:20-cv-03799-JPB<br><br>Complaint for: civil violations of the federal RICO Act; legal malpractice; fraud; breach of the duty of good faith and fair dealing; violations of the Florida Deceptive and Unfair Trade Practices Act; and negligent supervision |

## <u>COMPLAINT</u>

THE PLAINTFFS, Casey M. White and Patricia A. Crimmins, file this

Complaint against the above-named Defendants, and plead as follows:

*JURY TRIAL DEMANDED*

### INTRODUCTION

1.      This is a two-plaintiff consumer case, brought by Casey White (nee

Crimmins) and her mother, Patricia Crimmins, about an illegal nationwide,

advanced-fee, student loan debt elimination telemarketing scam, operated and

devised by the Defendants, that leaves vulnerable debtors, like Casey White and

her co-signor mother, Patricia Crimmins, tens of thousands of dollars poorer[1], and worse, in exchange for broken promises about impossible legal services that never are, and never could be, actually performed.

2.      The (non-Berger Singerman) Defendants, through their web of business relationships[2], engage in illegal cold-call-telemarketing to solicit consumers, like Casey White (and her co-signor mother, Patricia Crimmins), struggling with their private student loan debt to enroll in the Defendants' student loan debt elimination "program" – which turns out to be nothing more than the Defendants' Enterprise's illegal collection of up-front fees for the performance of little, if any, legitimate legal and debt elimination services.

3.      In brief, the "student loan debt resolution" racket at issue in this lawsuit works as follows: Resolvly, LLC, a shell limited liability company controlled and owned by Gregory Fishman and Julie Queler, purchases, repackages and launders sales-leads from non-Florida Bar approved lawyer referral companies[3], of consumers, like Casey White, who have large private student loan

---

[1] These losses are in addition to the Plaintiffs' consequential damages suffered as a result of the Defendants' student loan debt elimination "program".

[2] Or, in the case of Benjamin Zuckerman and Berger Singerman (together, "the Berger Singerman Defendants"), specifically, the Plaintiffs' allegations revolve around those Defendants' actions in actively devising, designing, forming, and advising the web of businesses that directly comprise the non-Berger Singerman Defendants' student loan debt "elimination" program at issue in this lawsuit. All references in this Complaint to "Defendants" do **not** include Defendants, Benjamin Zuckerman or Berger Singerman, unless specifically stated.

[3] Like Crown Media Co., LLC; and ProvenDirection, Inc.

balances. The Defendants particularly focus their marketing efforts on consumers who are struggling with making timely payments on their private student loan accounts.

4.      Resolvly, then, cold-calls the consumers, like Casey White, or it has its agents, like Crown Media Co., initiate the cold-calls to its sales-leads to enroll these consumers in what the sales agents market as the "law firm's" student loan debt elimination "program".

5.      The sales staff[4] of this Enterprise, employees of Resolvly and National Legal Staffing Support, LLC ("NLSS"), or their agents, like Crown Media Co., represent to the recipients of these cold-calls, like Casey White, that they work for "the law firm" – that being the law firm of attorneys, Kevin Mason and Chantel Grant, GM Law Firm, LLC[5]. Further, the sales agents on these telemarketing calls represent to the recipients of the calls, like Casey White, that they offer a debt elimination program that will eliminate all the consumer's, and

---

[4] Upon information and belief, the NLSS and Resolvly sales staff is directly supervised by Gregory Fishman, Joseph DeVito, and Ari Pollan.

[5] Initially, the attorney marketing fronts for the Defendants' "program" were Stuart Goldberg (from March 2015 until October 2015), followed by Kevin Mason (beginning in 2015), and then Kevin Mason and Chantel Grant of GM Law Firm (beginning in 2016). Stuart Goldberg was fired from his own law firm, Stuart Goldberg, P.A., by the Berger Singerman Defendants, on behalf of all Defendants, in October 2015. The "program attorney" then became Kevin Mason, exclusively, from October 2015 through August 1, 2016, when Chantel Grant joined Kevin Mason as the joint "program attorneys", and when they converted the former Kevin Mason, P.A., into the entity, GM Law Firm, LLC, with the Florida Secretary of State. Kevin Mason resigned from his involvement with the Defendants' "program", and GM Law Firm, effective December 31, 2016. Since January 1, 2017, Chantel Grant has been the sole owner of GM Law Firm and the sole attorney marketing front for the Defendants' program.

their consignors', private student loan debt for payment of fifty cents on the dollar[6] of the principal balance of the consumer's total student loan balance, to be paid over 72 monthly payments.

6.      Resolvly and NLSS', or their agents', marketing pitch to Casey White and her co-signor mother, Patricia Crimmins, was as follows: that after completing the "law firm's" "debt elimination program", and after paying of half of the amount of her total enrolled student loan balance(s) – this **$56,325.50** program fee being paid over 72 equal monthly payments of **$782.30** drawn from their bank account(s) by automated clearing house, or otherwise, charged to their credit card(s)  – that Casey White's, and her co-signor mother, Patricia Crimmins', entire student loan balance would be completely eliminated as a legal liability.

7.      These representations, relied upon by Casey White and Patricia Crimmins, were lies. The Defendants' "debt elimination program" did not eliminate any of the private student loans that Casey White and Patricia Crimmins "enrolled" into their program. Instead of eliminating the Plaintiffs' enrolled student loan debts, as promised, the Defendants' program, through the entities NLSS and

---

[6] The Defendants' marketing agents do not make clear to whom, precisely, these payments ultimately flow. Like all aspects of the Defendants' "program", these details are never provided to the Defendants' clients, like Casey White, even when the clients repeatedly press the Defendants' agents for these answers. The sales staff identifies themselves as working for "the law firm", but the truth is that they are marketed for an Enterprise controlled, managed, and owned by Gregory Fishman and Julie Queler, to whom an overwhelming bulk of the client payments flow.

GM Law Firm, engages in activities that give the appearance of legitimate debt relief services, but that provide little, if any, actual value to their clients. GM Law Firm, and its legal outsourcing company, NLSS, merely send cease and deist letters to their clients' creditors, while disputing the reporting of these debts with the major credit bureaus without any basis for said disputes (which ultimately fail, because there is no basis for the disputes). GM Law Firm, NLSS, and the Defendants Enterprise as a whole, then sit back and hope that their clients' creditors do not file collection lawsuits when the loans inevitably go into default.

8.      The attorney marketing fronts for this racket, Florida attorneys, Kevin Mason and Chantel Grant[7], and their associates at GM Law Firm, provide the cover of legitimacy for the illegal "debt elimination" program that the Defendants, collectively, and in concert, operate. The use of attorney marketing fronts, like Kevin Mason and Chantel Grant, and their law firm, GM Law Firm, LLC[8], to provide an air of legitimacy to this "debt elimination program" is essential to the

---

[7] Prior to Kevin Mason and Chantel Grant, Florida attorney, Stuart Goldberg, was the attorney marketing front for Defendants' "program". However, upon information and belief, Stuart Goldberg discovered that the Defendants' operation was a scam early into his involvement with it. Stuart Goldberg, then, ended his relationship with this "program", but the managers of the Enterprise at issue in this lawsuit – namely, Gregory Fishman, Julie Queler, Resolvly, JG Factor, and NLSS – continued to use Stuart Goldberg's name on the "program materials" for this racket. This practice continued until Kevin Mason and Chantel Grant later became the new attorney marketing fronts for the Enterprise's "program" that at issue in this lawsuit.

[8] Kevin Mason and Chantel Grant formed GM Law Firm, LLC, with the Florida Secretary of State as a conversion of the prior business entity, Kevin Mason, P.A., on August 2, 2016. The Defendants formed Kevin Mason, P.A., on January 5, 2015.

racket's success in enrolling new clients (victims), like Casey White and Patricia Crimmins.

9.      Further, the "program" at issue in this action is not driven by the attorneys of "the law firm," whether they be Chantel Grant, Kevin Mason, or, prior to their involvement, Stuart Goldberg. The Enterprise is effectively owned, managed, and controlled by Gregory Fishman and Julie Queler, who plug, and unplug, the attorney marketing-fronts into this "program" and fire them from the "program" at their discretion, through the business entities, Resolvly, NLSS.

10.     Gregory Fishman, through his companies' attorney, Benjamin Zuckerman of the Berger Singerman law firm, terminated the first attorney marketing-front, Stuart Goldberg, as the "program attorney" from his own law firm, Stuart Goldberg, P.A., in October 2015; Gregory Fishman then plugged in Kevin Mason (a former associate of Benjamin Zuckerman) and Kevin Mason, P.A., into that role in October 2015; later, in August of 2016, Gregory Fishman plugged Chantel Grant into what is now known as GM Law Firm to fill the "program attorney" role. Chantel Grant remains the "program attorney" for Defendants' "student loan debt elimination program".

11.     The clients of this program, like Casey White and Patricia Crimmins, are only told of the change in their "program attorneys" after these changes take place, and with no explanation for why their attorney has changed without their

consent. Casey White and Patricia Crimmins were enrolled as clients of Kevin Mason, Chantel Grant, and GM Law Firm in early December 2016, after being solicited in October 2016. Within one month, Kevin Mason was no longer their attorney, with no explanation provided.

12.     Gregory Fishman, through Benjamin Zuckerman of the Berger Singerman law firm, terminated Stuart Goldberg as the first "program attorney," via termination agreements between Stuart Goldberg and Resolvly, NLSS, and JG Factor in October 2015. Gregory Fishman and Benjamin Zuckerman preferred Kevin Mason over Stuart Goldberg as the "program attorney" because, unlike Stuart Goldberg, Kevin Mason allowed NLSS and Resolvly employees to robo-sign his name on documents and he, Kevin Mason, permitted the Resolvly sales staff to be more aggressive in making promises of debt elimination to enroll more clients than Stuart Goldberg permitted them to do. Stuart Goldberg objected to these practices and was terminated as the "program attorney" by Gregory Fishman and Benjamin Zuckerman in response to these objections.

13.     In addition, once the consumer is "enrolled" into the "program" – through Resolvly and NLSS sales agents obtaining the consumers e-signature on the program's legal services and automated clearinghouse forms – the entire balance of the consumer's program payments is sold off, or "factored", as an account receivable to a company named JG Factor, LLC. All consumer accounts,

including Casey White's and Patricia Crimmins', are sold for only 10-15 cents on the dollar from the program law firm to JG Factor in an exclusive arrangement. JG Factor is owned by Julie Queler and Gregory Fishman – they are the "JG" in JG Factor. The program law firm, now GM Law Firm, must enter into this exclusive factoring agreement with JG Factor in order to receive clients from Resolvly and NLSS. 85%-90% of the so-called "legal fees"[9] flow to Julie Queler and Gregory Fishman, non-attorneys, via JG Factor. Further, a separate $1,250 referral fee is paid by the program law firm, now GM Law Firm, off the top, to Resolvly (which then flows to Gregory Fishman and Julie Queler). Separately, and additionally yet, the program law firm must agree to an exclusive legal service outsourcing agreement with NLSS and to pay NLSS outsourcing fees for its staff, from $45-$65 per hour. The NLSS fees ultimately flow to Gregory Fishman and Julie Queler, the owners of NLSS, as well.

14. Gregory Fishman and Julie Queler, through this closed circuit of purchased and laundered client leads, telemarketed debt relief services, exclusive legal outsourcing agreements, and exclusive and mandatory factoring agreements – all operated through Resolvly, NLSS, GM Law Firm, and JG Factor – have

---

[9] These are not legal fees because the payments first flow to NLSS, who pays Resolvly its referral fee off the top, followed by NLSS paying itself for its "outsourcing services", followed by paying JG Factor, with any remainder ultimately being paid to the program law firm by NLSS. There are no direct payments between the consumer, the client, and the law firm under this "program".

managed to develop an enterprise that allows them, as non-attorneys, to capture over 90% of all so-called "legal fees" involved in this so-called student loan debt elimination "program". This entire framework, including the legal services agreement used to bind the Defendants' victims to the illegal, unethical, and misrepresented terms of their "program", was devised by the architect of this entire enterprise, attorney Benjamin Zuckerman of the Berger Singerman law firm.

15.     Throughout the relevant period (at least since 2015[10]), the Defendants have engaged individually, and in concert with one another, in unlawful, abusive, and unfair practices with respect to the attorney-client relationships formed with the Plaintiffs and the program attorneys, program law firms, and their agents, like NLSS, Resolvly, and JG Factor.

16.     Casey White and Patricia Crimmins plead the following claims against the following Defendants: (a) claims for civil violations of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c) as to all named Defendants (excluding Berger Singerman LLP only, and including P. Benjamin Zuckerman, individually); (b) fraud as to Resolvly, LLC, National Legal Staffing Support, LLC, Gregory Fishman, and Julie Queler only; (c) claims for attorney malpractice against GM Law Firm, LLC, Chantel Grant, and Kevin Mason only;

---

[10] Upon information and belief, Chantel Grant's involvement with this Enterprise did not begin until 2016.

(d) breaches of the duty of good faith and fair dealing against Kevin Mason, Chantel Grant, and GM Law Firm, LLC, only; (e) violations of the Florida Deceptive and Unfair Trade Practices Act as to all Defendants (including P. Benjamin Zuckerman); and (f) negligent supervision as to Berger Singerman, LLP, only.

## PARTIES

17.     The first-named Plaintiff, Casey White (nee Crimmins), is an adult citizen of the state of Virginia. Casey Crimmins is a 2015 graduate of the Virginia Military Institute. Casey White is a police officer with the Third Precinct of the Virginia Beach Police Department. At the time of her enrollment in the Defendants' program in December 2016, Casey White was not yet married and went by her maiden name, Crimmins.

18.     The second-named Plaintiff, Patricia Crimmins, a citizen of Virginia, is the mother of Casey White and the co-signor on Casey White's private student loans at issue in this action. Patricia Crimmins is a co-party to the Legal Services Agreement at issue in this action and she made direct payments to NLSS on behalf of her daughter, Casey White, since she has a financial interest in the payment of those student loans. Patricia Crimmins is a Master Sergeant in the U.S. Marine Corps with 22 years of service to our country.

19.     First-named Defendant, GM[11] Law Firm, LLC, is a Florida limited liability company that has its agents, Resolvly and NLSS, enroll consumers into its, NLSS', and JG Factor's "debt elimination program" through nationwide telemarketing sales calls. This law firm is owned and operated by Florida attorney, Chantel L. Grant - although its activities are effectively controlled by Gregory Fishman (with the active advising of Benjamin Zuckerman of the Berger Singerman law firm) and Julie Queler. Chantel Grant, is the registered agent of GM Law Firm, LLC. Its principal place of business is: 1515 South Federal Highway, Suite 105, Boca Raton, Florida 33432. GM Law Firm, LLC, was formed in August 2016 as a name and entity conversion from the prior entity, Kevin Mason, P.A., which was the program law firm immediately prior to GM Law Firm, but subsequent to the first program law firm, Stuart Goldberg, P.A.

20.     Second-named Defendant, Chantel L. Grant, is a Florida resident and member of the Florida Bar. Chantel Grant is not licensed to practice law in the state of Virginia, where the Plaintiffs reside. Chantel Grant worked directly for NLSS as a "consultant" before she formed GM Law Firm with Kevin Mason in August 2016. Prior to working for NLSS, Chantel Grant worked for an outfit called Paralegal Staffing Support, which was involved with Gregory Fishman, Debt Be Gone, LLC, and Otto Berges on a similar advanced-fee debt relief scam for credit

---

[11] The "GM" in GM Law Firm stands for Grant and Mason.

card and consumer debts. Chantel Grant has been Casey White and Patricia

Crimmins' program attorney since December 6, 2016 until they discovered his

injuries and left the "program" on July 19, 2019.

21.     Third-named Defendant, National Legal Staffing Support, LLC, is a

Delaware limited liability company, with its principal place of business located in

the same building as the offices of the other Defendants in this action, at: 1515

South Federal Highway, Suite 113, Boca Raton, Florida 33432. NLSS, and its

agents, John and Jane Doe Defendants 1-5, acted as agents and as co-conspirators

and co-tortfeasors, acting in concerted action with the other Defendants, forming a

RICO Enterprise, and creating the basis for joint and several liability on the part of

all Defendants in this litigation. NLSS works with Resolvly to enroll consumers,

like Casey White and Patricia Crimmins, into the Defendants' student loan debt

elimination "program" on the sales side of this Enterprise, and then NLSS services

the client accounts, on behalf of its principal, GM Law Firm, as a part of the

mandatory outsourcing agreement between the program law firm and NLSS.

Further, NLSS receives all client payments from the Enterprise's payment process,

Reliant Account Management, and then pays, through the Enterprise's CPA,

Michelle Shulman, at the Daskal Bolton accounting firm in Boca Raton, the

respective parties to the Enterprise – Resolvly ($1,250 referral fee), JG Factor

(assignment of client's account receivable interest at 85-90 cents on the dollar),

NLSS (outsourcing fees at $45-$65 per hour billed), and GM Law Firm (whatever is left, if anything) – their respective cuts of these client fees.

22.      Fourth-named Defendant, Gregory Fishman is a Florida citizen. Gregory Fishman, upon information and belief, is the leader of the RICO Enterprise described in this Complaint. Gregory Fishman is a veteran of up-front-fee debt relief scams, going back, in particular, to a similar "credit card debt elimination program" – Debt Be Gone, LLC/Berges Law Group. Chantel Grant and Julie Queler also worked with Gregory Fishman on Debt Be Gone up until 2015, when it closed its doors following litigation.

23.      Fifth-named Defendant, Julie Queler, is a Florida citizen. Julie Queler, upon information and belief, is a primary investor, and business partner, to Gregory Fishman in this RICO Enterprise. Julie Queler is involved in the day-to-day management of this Enterprise. Upon information and belief, Julie Queler is the 53% owner of NLSS, the 50% owner of Resolvly, and is the 50% owner of JG Factor. Julie Queler resides at 1903 North Swinton Avenue, Delray Beach, Florida 33444.

24.      Sixth-named Defendant, Kevin P. Mason, is a Florida attorney and a founding member of GM Law Firm. Kevin Mason is not licensed to practice law in the state of Virginia. Kevin Mason was the second attorney marketing front for the Defendants' student loan debt elimination "program". Kevin Mason became the

Plaintiffs' first program attorney on December 6, 2016. By December 31, 2016, 25 days later, Kevin Mason withdrew his participation from the Defendants' program and, without the knowledge of prior consent of the Plaintiffs, ceased being their attorney.

25.     Seventh-named Defendant, Resolvly, LLC ("Resolvly"), is a Florida limited liability company, with its principal place of business located in the same building as NLSS, GM Law Firm, the former Kevin Mason, P.A., and JG Factor, all at: 1515 South Federal Highway, Boca Raton, Florida 33432. Resolvly, and its agents, John and Jane Doe Defendants 1-5, act as agents and as a co-conspirators and co-tortfeasors, acting in concerted action with the other Defendants, forming a RICO Enterprise, and creating the basis for joint and several liability on the part of all Defendants in this litigation. Resolvly effectively launders out-of-state obtained client leads, like Casey White and her co-signor mother, Patricia Crimmins – these being client leads that Resolvly purchases from non-Florida Bar registered and approved lawyer referral services, like Crown Media Co., LLC, but then repackages and resells to the student loan debt elimination Enterprise at issue in this dispute, with Resolvly earning a $1,250 "referral fee" paid first, before JG Factor, NLSS, or GM Law Firm receive any cut of the clients' fees. Resolvly has its agents, like Crown Media, initiate the telemarketing calls to the sales leads, like Casey White. Crown Media then transfers the sales leads that seem like good sales

prospects, like Casey White, to the call center of Resolvly, whose employees, along with NLSS employees and "closers", John Sabia and Joe Devito, close the "enrollment" of these sales leads as new clients of the "law firm's"[12] debt elimination "program".

26.     Eighth-named Defendant, JG Factor, LLC, is a Florida limited liability company owned by Julie Queler and Gregory Fishman with its principal place of business as the same office suite as NLSS (1515 S. Federal Highway, Suite 113, Boca Raton, FL 33432). JG Factor's registered agent is URS Agents, LLC, 3458 Lakeshore Drive, Tallahassee, FL 32312. Gregory Fishman and Julie Queler use JG Factor as the vehicle to obtain 85%-90% of the total client "attorney fees" payments received by the Enterprise, through the mandatory factoring agreements that the program law firms must execute in order to be the program law firms.

27.     Ninth-named Defendant, P. Benjamin Zuckerman, is a Florida attorney and a partner at the Boca Raton office of Berger Singerman, LLP. Benjamin Zuckerman has been counsel to the advance-fee debt elimination businesses of Gregory Fishman and Julie Queler, like Debt Be Gone, LLC, going back at least one decade. Benjamin Zuckerman is the architect and mastermind of

---

[12] All salespeople, legal assistants, paralegals, and other staff acting on behalf of this Enterprise, whether with Resolvly, NLSS, Crown Media, or other presently unidentified business entities always identify themselves as being "with the law firm" or "from the law firm".

the student loan debt resolution program at issue in this lawsuit. Benjamin Zuckerman: (1) devised, designed, and formed the closed circuit of business entities involved in this case (NLSS, Resolvly, JG Factor, Stuart Goldberg, P.A., GM Law Firm), for the specific and intended purpose of assisting Gregory Fishman and Julie Queler, and their companies' scheme to evade the Federal Trade Commission's Telemarketing Sales Rules, and those Rules' prohibition on the collection of advance fees from businesses performing debt relief services prior to the elimination or settlement of the consumers' enrolled debts **and** to evade the Florida Bar's rules on the generation of leads from entities not registered with the Florida Bar as lawyer referral organizations; (2) drafted the illegal and unethical Legal Services Agreement that the program attorneys, including Kevin Mason and Chantel Grant, and their law firm, GM Law Firm, have their agents at NLSS and Resolvly use to close the sale of the program, and bind the clients to these massive program payments, as occurred with Casey White and Patricia Crimmins in this case; (3) devised, designed, and formed JG Factor, LLC, as a means to siphon 85%-90% of the so-called "attorney's fees"[13] paid by clients, like the Plaintiffs, to non-attorneys, Gregory Fishman and Julie Queler, as a means to circumvent the Florida Bar prohibition on non-attorneys owning law firms or earning portions of

---

[13] The false labelling of these client fees, paid directly to NLSS, and **not** to any law firm, as "attorney's fees" is central to the Benjamin Zuckerman-devised scheme of this Enterprise to circumvent the FTC's Telemarketing Sales Rules. The Rules prohibit advance-fees paid to debt relief companies who telemarketed their services, like NLSS.

attorney's fees; (4) devised, designed, and created the details of how client payments, like those from Casey White and Patricia Crimmins, flow to the respective members of this Enterprise (National Legal Staffing Support; Resolvly; Kevin Mason, P.A./GM Law Firm; JG Factor) after the ACH or credit card payments are processed on behalf of NLSS; and (5) fired Stuart Goldberg as the program attorney, and from his (Goldberg's) own law firm of Stuart Goldberg, P.A., in October 2015 and plugged in his former associate, Kevin Mason, as the new, and favored, program attorney.

28.     Berger Singerman, LLP, is a Florida business law firm. Berger Singerman may be served via its Chairman, Mitchell Berger, Esq., or any other officer who may accept service for that partnership. Berger Singerman failed to reasonably supervise its partner, Benjamin Zuckerman, as it relates to Benjamin Zuckerman's substantial involvement with the other Defendants in this action, and their illegal, advance fee, student loan debt elimination "program." Benjamin Zuckerman, as an agent of Berger Singerman, has crossed the line, repeatedly, of lawful, and ethical, representation of his clients, Gregory Fishman, Julie Queler, Resolvly, LLC, National Legal Staffing Support, JG Factor, Kevin Mason, P.A./GM Law Firm – and the entire RICO Enterprise, itself. Benjamin Zuckerman, an agent of the Berger Singerman law firm at all relevant times, actively assisted this RICO Enterprise, for a profit, by providing the business-law and other legal

services required for this RICO Enterprise to continue to operate, gin profits, and avoid civil and criminal liability. Benjamin Zuckerman's relationship to Gregory Fishman and Julie Queler goes back, at least, to the prior Fishman and Queler illegal "credit repair" RICO Enterprise of Debt Be Gone, LLC, for which Benjamin Zuckerman served as registered agent, along with its general counsel. Further, Benjamin Zukerman provided valuable business referrals to third-parties, like RAM, the ACH payment processor for this Enterprise, to enable the illegal profits from this RICO Enterprise to flow. A central thesis of this Complaint is that Benjamin Zuckerman, as an agent of the Berger Singerman law firm, actively participated – and still participates – in this RICO Enterprise by providing legal advice aimed at furthering the knowingly illegal activities of the RICO Enterprise. Gregory Fishman, as will be proven through discovery in this matter, would openly brag to his employees at NLSS, Resolvly, and GM Law Firm, that he was not worried about getting sued by defrauded clients, or anyone else for that matter, because he has "the Perry Mason" (referring to Benjamin Zuckerman) of attorneys working for him. Berger Singerman, LLP, is vicariously liable for all intentional and negligent acts of Partner, Benjamin Zuckerman, via its failures to reasonably supervise the business activities of Benjamin Zuckerman as it related to the student loan debt elimination "program" at issue in this action

29.     John and Jane Doe Defendants 1-5 (and/or XYZ Business Entity Defendants 1-5) are presently unidentified persons or companies who have participated with Defendants in this "student loan debt elimination" scheme, but whose identities are reasonably expected to be revealed during discovery in this litigation.

## JURISDICTION AND VENUE

30.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, federal question jurisdiction. This case involves claims under the federal RICO Act, 18 U.S.C. § 1962. Further, this Court also has subject matter jurisdiction over this dispute based upon the complete diversity of citizenship of the Plaintiffs (Virginia citizens) and all the Defendants (Florida citizens and business entities). The amount in controversy in this dispute exceeds $75,000.

31.     This Court possesses general personal jurisdiction over all of the Defendants in this action based upon their domicile in Florida, the forum state.

32.     Venue for this dispute properly lies with this Court, as this litigation involves substantial alleged acts or omissions which occurred in the boundaries of the United States District Court for the Southern District of Florida.

33.     Florida substantive law applies to the state law and common law pendant claims in this action.

# FACTS

*The telemarketing of Casey White and Patricia Crimmins; and facts relevant to their claims against the non-Berger Singerman Defendants.*

34.     On or about October 2016, Casey White (then Casey Crimmins) received a telemarketing telephone call from an agent of "the law firm", GM Law Firm, and attorney, Kevin P. Mason.

35.     Resolvly and NLSS, or an agent acting on their behalf, initiated this October 2016 telemarketing sales call to Casey White.

36.     During this call, the telemarketing sales agent of Resolvly and NLSS, or one of their agents, whose identity is currently unknown, described the represented terms of the purported "student loan debt elimination program" that is at issue in this lawsuit to Casey White and her mother, co-signor, and co-Plaintiff, Patricia Crimmins.

37.     Casey White and Patricia Crimmins relied on the oral representations from the Resolvly/NLSS sales agent and follow up emails that took place between October and early December 2016 between Patricia Crimmins and the "law firm's" staff at NLSS – namely, Santana Allen – to enter into the written legal services agreement with then program law firm, GM Law Firm, and attorney, Kevin Mason.

38.     Casey White executed her Legal Services Agreement with GM Law Firm on December 6, 2016.

39.     Casey White's decision to enter into the "law firm's" debt elimination program on December 6, 2016, was made in reasonable reliance on the front-end representations and promises made by the NLSS/Resolvly sales staff to her and her mother, Patricia Crimmins, about their program leading to complete "debt elimination" for the clients, following the completion of the clients' program payments of 50% of their total student loan balance.

40.     The terms of the (then) "Kevin Mason Settlement Program" that were represented to Casey White and Patricia Crimmins, orally, during the telemarketing telephone call that NLSS and Resolvly made to them in October 2016, and in the follow up emails from NLSS to Patricia Crimmins, are contained in both the "Program Overview" materials and the "Welcome to the Program" materials, which are incorporated, by reference, into this Complaint.

41.     A copy of the "Program Overview" marketing materials – which also function as a telemarketing sales script for this Enterprise – provided by Resolvly and NLSS (under the direction of Gregory Fishman and Julie Queler) to Casey White and Patricia Crimmins (by reading them, orally, during the telemarketing sales pitches in October 2016) is attached to, and incorporated into, this Complaint as Exhibit "1".

42.     Both Casey White and Patricia Crimmins distinctly remember the Resolvly and NLSS sales agents, who claim to be from "the law firm" on this

October 2016 sales cold-call to them, making the exact promises of complete elimination of Casey White's entire private student loan debt in exchange for them paying 50% of her total loan balance, paid over 72 monthly-installments, to "the law firm". Illustrative examples of these promises are contained in Ex. 1 to this Complaint.

43.     Casey White and Patricia Crimmins, by joining the Defendants' "program" and making their "program" payments, relied on these false promises of Resolvly and NLSS (as directed by Gregory Fishman and Julie Queler), and their sales agents, in their decision to enroll in the Defendants' student loan debt elimination "program".

44.     In particular, the Resolvly and NLSS sales agent on the October 2016 sales call to the Plaintiffs misrepresented to them that there existed an active "class action lawsuit against Sallie Mae for predatory loan practices" that they, Casey White and Patricia Crimmins, could join that would lead to a complete and full dismissal of Casey White student loan obligations (and Patricia Crimmins' co-signor liabilities on these loans).

45.     The "law firm," as these October 2016 misrepresentations went, would charge Casey White and Patricia Crimmins 50% of their total student loan balance, or $56,325.50, with this program fee being paid over 72 equal monthly payments of $782.30 drawn from their bank account(s) by automated clearing

house, or otherwise, charged to their credit card(s). Most importantly, the NLSS and Resolvly sales staff misrepresented that Casey White's, and her co-signor mother, Patricia Crimmins' entire private student loan balance would be completely eliminated as a legal liability, following their successful completion of their 72 months of program payments.

46.     Page 18 of this "Program Overview", Ex. 1, contains irrefutable examples of the fraudulent misrepresentations made during telemarketing calls to prospective clients of this racket, like Casey White and Patricia Crimmins, in order to induce them to agree to the monthly, illegal, advanced-fee, "debt resolution" payments. Page 18 of the standard Kevin Mason/NLSS Welcome Packet states:

> "The costs of the service are a fixed flat fee that your attorney has allowed you to make monthly installment payments. In order to do this, your attorney utilizes a payment processing company called National Legal Staffing Support. This is the name that will show up on your monthly bank statement. This fee is all that you will have to pay.
>
> **Nothing more, nothing less.**
>
> You can expect to be debt free with 39 to 48 months from your first payment. **It could be less, but not longer.** The reason being is that the litigation process may take shorter because in many cases the banks and

their debt collectors settle within the first 12 months of the lawsuit. This is a good thing." See Ex. 1, at Page (Slide) 18 (emphasis added).

47.     Although they likely regret it now, Resolvly and NLSS put their telemarketing sales script, represented to and relied upon by Casey White and Patricia Crimmins, in writing when they created their "Program Overview", Ex. 1.

48.     The Plaintiffs do not have the telephone calls recorded, but the exact terms of the specific promises contained on Page 18 of Ex. 1 were made by the Resolvly and NLSS salespersons on all telemarketing calls to them. These marketing calls induced the Plaintiffs to sign up for "the law firm's student loan debt elimination program," because it seemed like a no-brainer to enroll in a program that had the legitimacy of attorney involvement and oversight, and that also **guaranteed** to have Casey White's entire student loan balance ($112,651.00 at the time of enrollment) "eliminated" for 50 cents on the dollar over 72 months.

49.     Moreover, Casey White and Patricia Crimmins were told, during the telemarketing sales calls on the front-end in October 2016, consistent with Page 18 of Ex. 1, that NLSS was the "payment processor" for the "the law firm".

50.     The truth, it turns out, is that Reliant Account Management, a California-based company, and Centurion Merchant Services, are the payment processors for this so-called "program;" NLSS actually functions as the "law firm," staying in contact with the clients (although feeding the clients lies, in order

to keep the monthly payments from its client, like the Plaintiffs, coming for as long as possible); and the "attorneys" Kevin Mason and later, Chantel Grant are phantoms insofar as they do not directly communicate with their clients outside of rare occasions (like when litigation gets threatened, and only after jumping through many hoops to get such a call scheduled).

51.    It should be no surprise that clients, like the Plaintiffs, rarely if ever get the opportunity to speak to their program attorney. The Enterprise has thousands of clients, spread all across the United States (likely in all 50 states), with only the attorney marketing front, e.g., Kevin Mason and/or Chantel Grant, to act as the attorney for these thousands of "program" clients.

52.    Further, the overwhelming bulk of the so-called "attorney's fees" do not go to the program attorney or his or her law firm. 85%-90% of the client fees flow to non-attorneys, Gregory Fishman and Julie Queler, through JG Factor. An additional $1,250 per client-enrolled flows to Gregory Fishman and Julie Queler through their company, Resolvly, as a referral fee. And then the profits from the mandatory outsourcing of client-servicing from GM Law Firm to NLSS nets Gregory Fishman and Julie Queler the profits of NLSS' $45-$65 per hour fees. The program law firm retains the pittance of fees that are left, if any, after Gregory Fishman's and Julie Queler's closed circuit of companies, NLSS, Resolvly, and JG Factor, devour these massive so-called "attorney's fees".

53.    Furthermore, the Kevin Mason "Welcome to the Program"
materials/sales script, orally represented to the Plaintiffs by the Resolvly and NLSS
sales staff, is attached to this Complaint as Exhibit "2".

54.    According to the "Welcome to the Program" materials/script: "The
Law Office of Kevin P. Mason P.A. IS A BOUTIQUE MULTI-
JURISDICTIONAL LAW FIRM BASED IN SOUTH FLORIDA. OUR
PRACTICE IS FOCUSED ON CONSUMER RIGHTS IN STATE AND
FEDERAL COURT, AS WELL AS IN ARBITRATION MATTERS. OUR
PRACTICE ENCOMPASSES DEFENDING OUR CLIENTS' RIGHTS
AGAINST ABUSIVE AND ILLEGAL PRACTICES BY DEBT COLLECTORS,
CREDITORS, AND CREDIT REPORTING AGENCIES. THE STAFF AT The
Law Office of Kevin P. Mason P.A. HAS MANY YEARS OF EXPERIENCE
REPRESENTING PEOPLE LIKE YOU, THE AMERICAN CONSUMER, WHO
IS FACING A VARIETY OF LEGAL ISSUES. OUR NETWORK OF
ATTORNEYS AND PROFESSIONAL STAFF WILL PROVIDE EXPERT
GUIDANCE AND REPRESENTATION. WE HAVE DEDICATED OUR
CAREERS TO STANDING UP FOR YOUR RIGHTS. WE WILL ENSURE
THAT THE BEST POSSIBLE OUTCOME IN YOUR LEGAL MATTER IS
ACHIEVED." Ex. 2, "Welcome to the Program" materials/script, at Page 3.

55.     A copy of Casey White's December 6, 2016 Legal Services Agreement with Defendant, Kevin Mason, Chantel Grant, and GM Law Firm, is attached to, and incorporated into, this Complaint as Exhibit "3."

56.     NLSS, via advanced-fee ACH payments processed by Reliant Account Management (RAM) and credit card payments processed by Centurion Merchant Services, drafted a total of $31,815.90 from the Plaintiffs, without providing them any debt elimination or legal services of any value whatsoever. As a matter of fact, the Defendants' "program" has caused Casey White and Patricia Crimmins to accrue an additional $41,000 late fees, default fees, and interest being added to Casey White's student loan balance.

57.     A copy of the payment history, listing each of the Plaintiffs' payments to NLSS, totaling $31,815.90, is attached to, and incorporated into, this Complaint as Exhibit "4."

58.     The Defendants, collectively, are masters at building trust in the client of this "program;" trust that is abused to steal the illegal[14], advanced-fee, monthly "program" payments from their client. For instance, one of the NLSS' methods of building, and maintaining, the trust of their clients on behalf of this collective Enterprise was bi-weekly telephone calls with "paralegals" and "legal assistants" from "the law firm", where these NLSS employees, acting on behalf of the

---

[14] The Federal Trade Commission bans upfront fees on debt relief among other violations committed by Defendants. (*see* 16 CFR 310.1-10).

collective Enterprise, would string along clients, like the Plaintiffs in this case, with puffery such as: "everything is going great on your account"; "these things take time: it's a lot of hurry up and wait"; "and this is just how the process works." Santana Allen was the main, but not the only, "program paralegal" who handled the bi-weekly "program" check-up calls to Casey White and Patricia Crimmins as a direct employee of NLSS, but acting on behalf of the Defendants' collective Enterprise.

59.     Further, the Defendants even created a client newsletter, the GM Law Firm Newsletter, that they sent to the "program's" clients, including Casey White and Patricia Crimmins in April 2018 to continue to maintain their trust (and keep the monthly ACH and credit card payments flowing to the Defendants). A copy of this April 2018 Program Newsletter is attached to, and incorporated into, this Complaint as Exhibit "5." It is unfortunate, however, that GM Law Firm focused more on providing recipes and movie reviews in its newsletter (Ex. 4) than it did fulfilling its sales agents' promises to clients of total elimination of their student loan debt.

60.     Casey White and Patricia Crimmins grew suspicious of the Defendants' program on July 19, 2019, after they could not get answers to their satisfaction about the purported progress being made on the resolution of Casey White's enrolled student loan balance.

61.     Patricia Crimmins, on behalf or herself and her daughter, Casey White cancelled their enrollment in the Defendants' program on July 19, 2019.

62.     Further, this financial loss has caused the Plaintiffs a cascade of consequential financial, hedonic, and psychological harm to be described to the jury at trial. This harm includes the inability of Patricia Crimmins to be listed on her, and her husband's, home mortgage due to the ruination of her credit following her enrollment into the Defendants' student loan debt elimination "program" in December 2016.

*Benjamin Zuckerman, of the Berger Singerman law firm, and facts relevant to his knowing and material role as the designing architect of the non-Berger Singerman Defendants' illegal, advanced-fee, student loan debt elimination "program."*

63.     Benjamin Zuckerman designed the non-Berger Singerman Defendants' student loan debt elimination "program" at issue in this action.

64.     Benjamin Zuckerman designed the financial framework for how clients' program payments are divided, and distributed, among the members of the Enterprise.

65.     Specifically, Benjamin Zuckerman designed and formed the closed circuit of companies owned by Gregory Fishman and Julie Queler – Resolvly, NLSS, JG Factor – that allow these non-attorneys to reap over 90% of the illegal so-called "attorney's fees" from the non-Berger Singerman Defendants' advanced-fee student loan debt elimination "program."

66.     The non-Berger Singerman Defendants' student loan debt elimination "program" at issue in this action, devised and designed by Benjamin Zuckerman in the scope of his legal practice with Berger Singerman, and described in this Complaint, is an illegal enterprise that continues to regularly commit mail fraud, telemarketing, and wire fraud.

67.     The non-Berger Singerman Defendants' student loan debt elimination "program" at issue in this action, devised and designed by Benjamin Zuckerman in the scope of his legal practice with Berger Singerman, and described in this Complaint is an illegal enterprise that continues to regularly commit violations of the Federal Trade Commission's Telemarketing Sales Rules' prohibitions against the collection of advance-fees for debt relief services sold via telemarketing[15].

68.     The non-Berger Singerman Defendants' student loan debt elimination "program" at issue in this action, devised and designed by Benjamin Zuckerman in the scope of his legal practice with Berger Singerman, and described in this Complaint, is an illegal enterprise that continues to regularly commit violations of the Florida Bar's rules regarding lawyer-referral services and reasonableness of fees[16], as concerns Resolvly's laundering of client leads, purchased in bundles

---

[15] 16 C.F.R. § 310.4(a)(5)(i).

[16] See Florida Rule of Professional Conduct 4-1.5(a) ("Illegal, Prohibited, or Clearly Excessive Fees and Costs. A lawyer must not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost, or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating The Florida Bar. A fee or cost is clearly excessive when: (1) after a review of the facts, a lawyer of ordinary

from other companies that are not registered as lawyer-referral organizations with the Florida Bar, like Crown Media, and the grossly excessive fees charged by GM Law Firm, but directly collected by NLSS.

69.     Benjamin Zuckerman created the organizational structure of the non-Berger Singerman's illegal, advanced-fee, student loan debt elimination "program."

70.     Benjamin Zuckerman, in his legal practice at Berger Singerman, and on behalf of his clients, Gregory Fishman and Julie Queler, drafted all relevant agreements of the non-Berger Singerman Defendants in this action: the legal services agreements that Defendants induced Casey White to sign, Ex.1; the referral fee agreement between the program law firm, GM Law Firm and Resolvly; the outsourcing staffing agreement between the program law firm, GM Law Firm and NLSS; the factoring agreement between the program law firm, GM Law Firm

---

prudence would be left with a definite and firm conviction that the fee or the cost exceeds a reasonable fee or cost for services provided to such a degree as to constitute clear overreaching or an unconscionable demand by the attorney; or (2) the fee or cost is sought or secured by the attorney by means of intentional misrepresentation or fraud upon the client, a nonclient party, or any court, as to either entitlement to, or amount of, the fee.") (emphasis added); see also, Florida Rule of Professional Conduct 4-7.22(d) and the following Comment from Rule 4-7.22, "Additionally, a fee that constitutes an improper division of fees occurs when the qualifying provider directs, regulates, or influences the lawyer's professional judgment in rendering legal services to the client. See e.g. rules 4-5.4 and 4-1.7(a)(2). Examples of direction, regulation or influence include when the qualifying provider places limits on a lawyer's representation of a client, requires or prohibits the performance of particular legal services or tasks, or requires the use of particular forms or the use of particular third party providers, whether participation with a particular qualifying provider would violate this rule requires a case-by-case determination." (Emphasis added).

and Gregory Fishman and Julie Queler's factoring company, JG Factor; the termination agreements with former program attorneys, Stuart Goldberg and Kevin Mason.

71.     All these materially relevant documents in this case bear metadata showing that they are all documents drafted by Benjamin Zuckerman in his capacity as a partner at the Berger Singerman law firm.

72.     To be clear, the (illegal, unethical, and unenforceable) GM Law Firm Legal Services Agreement, Ex. 1 to this Complaint, that the non-Berger Singerman Defendants, through the sales agents at Resolvly and NLSS, induced Casey White to sign with their (the sales agents') knowingly false promises of complete student loan debt elimination in December of 2016, was **not** drafted by GM Law Firm.

73.     This (illegal, unethical, and unenforceable) GM Law Firm Legal Services Agreement, Ex. 1 to this Complaint, that the non-Berger Singerman Defendants, induced Casey White to sign was, in truth, drafted by Benjamin Zuckerman in the scope of his legal practice at Berger Singerman.

74.     Benjamin Zuckerman knew, or he should have known, that the Legal Services Agreement that he drafted for the program law firms, like GM Law Firm, to use with their clients in the student loan debt elimination "program" at issue in this action, like Casey White and Patricia Crimmins, contained unethical, illegal, and unconscionable terms.

75.    Among these illegal and unethical terms contained in the Legal Services Agreement used by the program law firms, like GM Law Firm, and drafted by Benjamin Zuckerman, are: the payment of advanced fees, beginning immediately upon execution of the Legal Services Agreement, prior to the elimination or settlement of any enrolled client student loan debts, in clear violation of the FTC's Telemarketing Sales Rules; and the granting of complete and absolute authority to the program law firm, and its attorney, **not** the client(s), to make litigation and settlement decisions about the student loan debts enrolled into the program. *See* Legal Services Agreement, Ex. 1 to this Complaint, at Section 2(a)(iii), Litigation, and Section 5, Fees.

76.    On or about October 2015, Benjamin Zuckerman, who was regularly in the Defendants office at 1515 Federal Highway in Boca Raton, called the first program attorney, into an office and fired Stuart Goldberg from the non-Berger Singerman Defendants' student loan debt elimination "program".

77.    Amazingly, Benjamin Zuckerman, on behalf of Gregory Fishman and Julie Queler, fired Stuart Goldberg from his own law firm, Stuart Goldberg, P.A., in October 2015.

78.    Defendants Gregory Fishman and Julie Queler, via their attorney, Benjamin Zuckerman, fired Stuart Goldberg from his role as the original program attorney. Gregory Fishman, through Benjamin Zuckerman, replaced Stuart

Goldberg as the program attorney with attorney, Kevin Mason, a former associate of Benjamin Zuckerman, on or about October 2015.

79.    Gregory Fishman, Julie Queler, and Benjamin Zuckerman desired to replace Stuart Goldberg with Kevin Mason in October 2015 because Kevin Mason did not have the ethical requirements that Stuart Goldberg possessed.

80.    In particular, Kevin Mason allowed NLSS and Resolvly staff, like John Sabia, to e-sign his name on client documents, without his, Kevin Mason's, pre-clearance of those communications.

81.    Kevin Mason also permitted the Resolvly and NLSS sales staff to make very aggressive and false promises of debt elimination in order to sign up more prospective clients like the Plaintiffs in this case, on their telemarketing calls. Stuart Goldberg did not permit these representations to be made by the program sales agents at NLSS and Resolvly when he discovered them in Fall of 2015. This disagreement was the source of major tension between Stuart Goldberg, Gregory Fishman, and Benjamin Zuckerman that ultimately led to Benjamin Zuckerman firing Stuart Goldberg in October 2015.

82.    Benjamin Zuckerman also dealt with staff issues at NLSS and Resolvly from their formation in 2015 until at least 2018.

83.    Benjamin Zuckerman designed and developed the illegal fee structure for the program payments of clients, like Casey White and Patricia Crimmins.

84.     Benjamin Zuckerman designed the unlawful client referral fees, legal outsourcing fees, and factoring fees structure of the non-Berger Singerman Defendants that has created a closed circuit of related companies that enables Gregory Fishman and Julie Queler to siphon off over 90% of the so-called attorney's fees paid by clients, like Casey White and Patricia Crimmins, as a part of the Defendants' student loan debt elimination "program," itself unlawful, unethical, and fraudulent.

85.     Further, when Gregory Fishman and Julie Queler needed a business referral to get NLSS approved with Reliant Account Management (RAM) for the processing of program ACH drafts from client bank accounts on March 20, 2015, they used Benjamin Zuckerman, and the prestige of the Berger Singerman law firm, on their RAM application.

86.     This March 20, 2015, RAM application, submitted by NLSS, is attached to, and incorporated into, this Complaint as Exhibit "5."

87.     The Berger Singerman business reference for NLSS to RAM, listing Benjamin Zuckerman as the contact for that business reference, is contained on Page 6 of Ex. 5 to this Complaint.

88.     Interestingly, this NLSS ACH account application, submitted to RAM, Ex. 5 to this Complaint, lists "Magic Mike" in the "How did you hear about RAM?" line on Page 1 of Ex. 5. Magic Mike, upon information and belief, is

"Magic" Mike Ferrari, of Crown Media, the lead generator whose client leads Resolvly launders as its own client leads.

89.     Further, Page 1 of Ex. 5 to this Complaint also states that NLSS is enrolling new program client at the rate of "600 monthly." This is a staggering amount of client enrollments.

90.     Finally, Page 3 of Ex. 5 contains a false, but damning, admission about the applicability of the FTC's Telemarketing Sales Rules to the business of NLSS and its connected businesses, like GM Law Firm:

**"Do you comply with the FTC "Debt Relief Services and Telemarketing Sales Rule?:     Yes."**

91.     The active involvement of Benjamin Zuckerman of the Berger Singerman law firm, was vital to the creation and success of the student loan debt elimination "program" at issue in this action, and detailed throughout this Complaint, subjects him, and makes Berger Singerman vicariously and derivatively liable to civil liability under the federal RICO Act, as well as liability under the Florida Unfair and Deceptive Trade Practices Act, related to the Plaintiffs' claims in this action. This is because Berger Singerman failed to reasonably supervise the business activities of its partner, Benjamin Zuckerman, beginning in 2015, and through the current day, as it related to Benjamin Zuckerman's substantial involvement, and design, of the non-Berger Singerman Defendants' student loan debt elimination "program" at issue in this action.

92.     Moreover, Berger Singerman, for failing to reasonably supervise its agent Benjamin Zuckerman, in connection with Benjamin Zuckerman's knowingly unlawful legal services, crucial to the success of Co-Defendants' Enterprise; is subject to civil liability for the Plaintiffs' damages based upon the tort of negligent supervision.

## TOLLING OF THE APPLICABLE STATUTES OF LIMITATIONS

93.     Casey White and Patricia Crimmins, the Plaintiffs, had no way of knowing the true nature and extent of Defendants' illegal advanced-fee "student loan debt elimination" telemarketing scheme necessary to prosecute their claims until July 19, 2019. As demonstrated in this Complaint, Defendants (with the possible exception of Berger Singerman) were intent on hiding their behavior from the Plaintiffs to keep their monthly payments flowing.

94.     Defendants were under a continuous and constant duty to disclose to Casey White and Patricia Crimmins the true character, quality, and nature of the legal representation, and other "student loan debt resolution" services that they were providing.

95.     Defendants (with the possible exception of Berger Singerman) knowingly and actively concealed their illegal advanced-fee "student loan debt elimination" telemarketing scheme, and the Plaintiffs reasonably and detrimentally relied upon Defendants' knowing and active concealment. Plaintiffs had no way of

knowing the true character, quality, and nature of the legal representation for which he had been charged prior to July 19, 2019.

96.     Accordingly, the applicable statutes of limitations have been tolled by operation of the discovery rule and Defendants' concealment with respect to all claims pleaded in this Complaint. Due to this, Defendants are estopped from relying on any statutes of limitations in defense of this action. Further, Defendants' conduct, as directed by Gregory Fishman, Julie Queler, Kevin Mason, Chantel Grant, and Benjamin Zuckerman, was part of a continuing, systematic practice, with the last act in this ongoing illegal, advanced-fee "student loan debt elimination" telemarketing scheme taking place within the applicable statute of limitations. As such, the Defendants are liable for all acts undertaken as part of the scheme as continuing violations.

## COUNT ONE – VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, 18 U.S.C. § 1962(C), AGAINST ALL DEFENDANTS EXCEPT BERGER SINNGERMAN, LLP

97.     The Plaintiffs, Casey White and Patricia Crimmins, incorporate, by reference, the preceding paragraphs of their Complaint.

98.     Casey White and Patricia Crimmins are a "person", respectively, as that term is defined in 18 U.S.C. §§ 1961(3) and 1962(c).

### A.     Enterprise

99.     For purposes of this claim, the RICO "enterprise" is an association-in-fact, as the term is defined in 18 U.S.C. §§ 1961(4) and 1962(c), consisting of GM Law Firm, LLC; Kevin P. Mason, individually; Chantel L. Grant, individually; National Legal Staffing Support, LLC; Resolvly, LLC; Gregory Fishman, individually; Julie Queler, individually; JG Factor, LLC; Benjamin Zuckerman, individually; and John and Jane Doe Defendants 1-5, and XYZ Business Entities ("the Enterprise"). The Enterprise is separate and distinct from the persons and businesses that constitute the Enterprise.

100.    The Enterprise was primarily managed by Gregory Fishman, Julie Queler, Kevin Mason (until October 2015), Chantel Grant, and Benjamin Zuckerman (in his capacity as a law partner at Berger Singerman).

101.    Gregory Fishman is the "kingpin" of the managers, running the day-to-day operations of this Enterprise, including managing the other main players in day-to-day operations of this Enterprise (like John Sabia, Joseph DeVito, Ari Pollan, Julie Queler).

102.    Benjamin Zuckerman, of Berger Singerman, is the "architect" who designed the Enterprise, formed the businesses that directly consist of this Enterprise, drafted the operative documents involved in perpetuating the Enterprise, and designed the closed circuit of companies that seek to circumvent the Florida Bar rules on paid referrals only for leads generated by a Florida Bar

registered lawyer referral organization, the Florida Bar prohibition on non-attorneys, like Gregory Fishman and Julie Queler, earning legal fees, and circumventing the FTC's Telemarketing Sales Rules through the "attorney model"[17] of consumer debt relief services. Upon information and belief, Berger Singerman directly benefitted from the fees charged to Co-Defendants by Benjamin Zuckerman's business design for the Enterprise.

103.   The companies and individuals that constitute the Enterprise were associated for the common purpose of defrauding their clients by charging them for illegal, advanced-fee "student loan debt elimination" legal services, via a nationwide cold-call telemarketing operation[18], and otherwise defrauding clients out of their monthly fees based upon promises of complete student loan debt elimination through their "program".

---

[17] "**Debt Settlement Companies Evade Ban through the Attorney Model**: Following the issuance of the FTC rule, there has been a rise in various attorney-related debt settlement models, in an apparent effort to evade both the FTC's advance fee ban, and also state laws that often exempt attorneys from their debt settlement regulations. Although the models differ across companies, in each, attorneys and non-attorneys are affiliated, but the attorneys are present only to provide a cover for collecting advance fees. In fact, the attorneys do not engage in any debt settlement activities; only non-attorneys perform any debt settlement work. Much has been written about how these models are being used to skirt the FTC's advance fee ban." Caryn Becker and Ellen Harnick, "Debt Settlement Firms Adopt 'Attorney Model' to Evade State and Federal Rules", *The Center for Responsible Lending Issue Brief*, November 5, 2013. https://www.responsiblelending.org/other-consumer-loans/debt-settlement/research-analysis/The-Rise-of-the-Attorney-Advance-Fee-Debt-Settlement-Model-FINAL-11-7-13.pdf (last viewed April 28, 2021).

[18] With sales leads of vulnerable student loan debtors, like Zachary Hodges, supplied to the Enterprise by Resolvly, who has purchased and repackaged sales leads that it has purchased from other (non-Florida Bar approved lawyer referral organizations) sources, such as Crown Media Co.

104.   Benjamin Zuckerman, and ultimately Berger Singerman, profited from Benjamin Zuckerman's active, and material, involvement in this Enterprise through the large attorney's fees that they have collected, derivatively, from Gregory Fishman, Julie Queler, and their companies – understanding that these Berger Singerman legal fees are being paid from the unlawful advanced-fees paid to NLSS by the struggling student loan debtors of the non-Berger Singerman Defendants' "program", like Casey White and Patricia Crimmins.

105.   At all relevant times, the Enterprise was engaged in, and its activities affected, interstate commerce. The proceeds of the Enterprise were distributed to its participants, as described throughout this Complaint.

106.   The Enterprise has operated from at least January 2015 and its operation is ongoing. The Enterprise has an ascertainable structure separate and apart from the pattern of racketeering activity in which the participants engage.

**The Pattern of Racketeering Activity**

107.   At all relevant times, in violation of 18 U.S.C. § 1962(c), Gregory Fishman, Julie Queler, Kevin Mason, Chantel Grant, and Benjamin Zuckerman have managed the affairs of the Enterprise through a pattern of racketeering activity as defined in RICO, 18 U.S.C. § 1961(5), as described in this Complaint. Gregory Fishman, Kevin Mason, Chantel Grant, and Benjamin Zuckerman have conducted the affairs of the Enterprise and participated in the operation and

management of the Enterprise. Gregory Fishman and Julie Queler participate in this pattern of racketeering activity through the business entities, JG Factor, National Legal Staffing Support and Resolvly (and, quite likely, other presently unknown business entities controlled by Gregory Fishman and Julie Queler). Chantel Grant and Kevin Mason participate in this Enterprise through the business entity, GM Law Firm (formerly Kevin Mason, P.A.). Benjamin Zuckerman participates in this Enterprise through his law practice at Berger Singerman.

### The Predicate Acts of Mail and Wire Fraud

108.   The pattern of racketeering activity consisted of mail and/or wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. Specifically, Kevin Mason, Chantel Grant, Gregory Fishman, NLSS, Resolvly, GM Law Firm, and JG Factor engaged in an intentional scheme or artifice, devised by Benjamin Zuckerman to defraud their clients into setting up monthly auto-draft payments under the false, or negligent, premise that the Defendants would completely eliminate their clients' private student loan balances with their respective creditors for payment of 50% of their total loan balance, paid over several years of monthly payments to what turns out to be NLSS.

109.   Of course, the Enterprise's impossible promises of total student loan debt elimination never happen. The Defendants simply pocket these "plan payments," along the respective fee-cuts described in this Complaint, and

otherwise convert them for their own, personal gain. Not one cent of this money flows to the consumers' student loan creditors. The Defendants never settle any of the consumers' student loan accounts or eliminate their student loan debt as a part of their "program."

110.   The false statements and omissions, and mail and/or wire communications that were made by Resolvly and NLSS, on behalf of the collective Enterprise, and in furtherance of the scheme, constitute predicate acts of mail and/or wire fraud.

111.   It was reasonably foreseeable to all Defendants, that the mails and/or wires would be used in furtherance of the scheme, and the mails and/or wires were in fact used to further and execute the scheme.

112.   The nature and pervasiveness of the Enterprise necessarily entailed frequent wire and/or mail transmissions. The precise dates of such transmissions cannot be alleged without access to the books and records of the Defendants. Nevertheless, Casey White and Patricia Crimmins can allege such transmissions at to them, personally, beginning in October 2015 and continuing through July 2019. The client emails, and bi-weekly client calls between NLSS/GM Law Firm and the victims of this racket, including the Plaintiffs in this action, were all aimed at keeping the "program" monthly payments to the Defendants flowing.

113.    For the purpose of furthering and executing the scheme, NLSS, Resolvly, and GM Law Firm, on behalf of all Defendants, regularly transmitted and caused to be transmitted by means of wire communication in interstate commerce writings, electronic data and funds, and also regularly caused matters and things to be placed in post offices or authorized depositories, or deposited or caused to be deposited matters or things to be sent or delivered by private or commercial interstate carriers.

114.    These communications contained both affirmative misrepresentations about the nature of the "program" charges, and were also intended to deceive the Plaintiffs in this action and many others, into believing that the monthly "program" charges assessed to their bank accounts and credit cards were legitimate and would result in the complete elimination of their student loan debt liabilities.

115.    These are only examples of certain instances of the pattern of racketeering activity consisting of mail and/or wire fraud violations engaged in by the Defendants. Each electronic and/or postal transmission was incident to an essential part of the scheme. As detailed above, the Defendants engaged in similar activities with respect to the Plaintiffs in this action, and likely tens of thousands of other victims, nationwide.

116.    Each interstate wire transfer of funds from the Plaintiffs to RAM/Centurion, and then from RAM/Centurion to NLSS (and then the further

downstream transfers, from there, to the other participants in this Enterprise, Resolvly, JG Factor, NLSS (paying itself), Berger Singerman, and finally, to GM Law Firm), was incident to an essential part of the scheme. As detailed above, the Defendants, collectively, engaged in similar activities with respect to the Plaintiffs in this action, and tens of thousands more, nationally.

117.   Additionally, each such electronic and/or postal transmission constituted a predicate act of wire and/or mail fraud in that each transmission furthered and executed the scheme to defraud the Defendants' clients, including the Plaintiffs in this action.

118.   The predicate acts of mail and wire fraud constitute a pattern of racketeering activity as defined in 18 U.S.C. § 1961(5). The predicate acts were not isolated events, but related acts aimed at the common purpose and goal of defrauding the Defendants' clients to pay unlawful, monthly, advanced-fees for cold-call telemarketed "student loan debt elimination" legal services (as a part of a "program" that also does not exist), solely in order for the Defendants to reap illicit profits.

119.   Additionally, all Defendants, collectively, directly engaged in a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5), by their repeated, flagrant, and continuing violations of 16 C.F.R. § 310.4(a)(5)(i)'s prohibition on the collection of payment of advanced-fees for telemarketed "debt

relief services" prior to the underlying consumer debts having either been settled or renegotiated. These advanced payments for telemarketed "debt relief services" are flagrant violations of the Federal Trade Commission's Telemarketing Sales Rules, as promulgated.

120.   Even further, Defendants, collectively, all directly engaged in a pattern of racketeering activity, as defined in 18 U.S.C. § 1961(5), by their repeated, flagrant, and continuing violations of 16 C.F.R. § 310.3(a)(2)(x). This is because the Telemarketing Sales Rules also prohibit sellers and telemarketers, like Resolvly and NLSS (acting on behalf of all Defendants and their Enterprise), from misrepresenting, directly or by implication, any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using the service.

121.   All Defendants have substantially participated in these predicate acts. These activities amounted to a common course of conduct, with similar pattern and purpose, intended to deceive borrowers.

**Injury to Casey White and Patricia Crimmins**

122.   As a direct and proximate result of violations of 18 U.S.C. § 1962(c) by Defendants, Casey White and Patricia Crimmins have been injured in their business or property within the meaning of 18 U.S.C. § 1964(c). The Plaintiffs paid and were charged for unlawful, monthly auto draft charges to their bank accounts

and credit cards, by reason, and as a direct, proximate and foreseeable result, of the scheme alleged.

123.    Under the provisions of 18 U.S.C. § 1964(c), all Defendants are jointly and severally liable to Casey White and Patricia Crimmins for three times the damages sustained by them, plus the costs of bringing and pursing this suit, including reasonable attorneys' fees.

**COUNT TWO – FRAUD**
**AGAINST DEFENDANTS, RESOLVLY, LLC; NATIONAL LEGAL**
**STAFFING SUPPORT, LLC; GREGORY FISHMAN; AND JULIE**
**QUELER**

124.    Casey White and Patricia Crimmins incorporate, by reference, the preceding paragraphs of this Complaint.

125.    The intentional misrepresentations of material facts related to the Defendants' purported student loan debt elimination "program", made by Defendants, Resolvly and NLSS (as directed by Gregory Fishman and Julie Queler), and their agents working on their behalf, to the Plaintiffs in this action constitute acts of fraud that have been committed against them.

126.    Defendants, Resolvly, NLSS, Gregory Fishman, and Julie Queler have committed, or actively participated in, knowing and intentional misrepresentations of the services provided by the student loan debt elimination "program" that is at issue in this lawsuit. These misrepresentations – that the Plaintiffs in this action will be entirely debt free from their student loan liabilities for payment of 50% of

Casey White's total student loan balance, in connection with the "program", over 72 months of "program" payments – were material and they were knowingly false.

127.   As a result of their reasonable and detrimental reliance on Resolvly and NLSS' (as directed by Gregory Fishman and Julie Queler), and their agents,' fraudulent misrepresentations, detailed in this Complaint, Casey White and Patricia Crimmins have suffered an ascertainable loss of money, property, and other consequential and hedonic damages.

128.   As a result of Resolvly and NLSS' (as directed by Gregory Fishman and Julie Queler), and their agents,' fraudulent misrepresentations about their student loan debt elimination "program", Casey White and Patricia Crimmins are entitled to recover compensatory damages, all costs of litigation, along with punitive damages in an amount sufficient to deter such conduct in the future, and reasonable attorney's fees.

## COUNT THREE – LEGAL MALPRACTICE
## AGAINST DEFENDANTS, GM LAW FIRM, CHANTEL GRANT, AND KEVIN MASON

129.   Casey White and Patricia Crimmins incorporate, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

130.   Attorneys Kevin Mason, Chantel Grant, and their law firm, GM Law Firm, have committed breaches of the professional tort-based duties that they owed to Casey White and Patricia Crimmins, as their clients.

131.   As a result of their trust and reliance on Chantel Grant's, Kevin Mason's, and GM Law Firm's negligent omissions/negligent legal services – believing that these attorney and law firm Defendants would eliminate Casey White's student loan debts, as promised – the Plaintiffs have suffered an ascertainable loss of money, property, and other consequential and hedonic damages (including severe damage to their credit reports).

132.   Further, Chantel Grant, Kevin Mason, and GM Law Firm violated the professional duties that they owed to their clients, the Plaintiffs, when they charged Casey White and Patricia Crimmins their illegal, and unreasonable[19], advanced-fees for the telemarketed student loan debt elimination program that their agents, Resolvly and NLSS, promised to them in the initial sales call made in October 2016.

133.   Instead of eliminating the Plaintiffs' enrolled student loan debt(s), as promised, Kevin Mason, Chantel Grant, and GM Law Firm, merely sent cease and desist letters to Casey White's private student loan creditor(s) and, upon

---

[19] Payment of $31,815.90 in so-called "legal fees" for only form cease and desist letters sent to Casey White's student loan creditor(s). These cease-and-desist letters, in fact, only harmed Casey White and Patricia Crimmins, since these cease-and-desist letters concealed from the Plaintiffs the severe delinquency on their student loans obligations that resulted from the Defendants' "program". The real purpose of these cease-and-desist letters is not to benefit the Defendants' clients, like the Plaintiffs, but to conceal the student loan delinquencies from them, the clients, in order to maximize the amount of monthly payments the Defendants receive, before their clients (victims) inevitably discover that they have been lied to, and defrauded, by the Defendants.

information and belief, sent dispute letters to the major credit bureaus without any basis for said disputes (which ultimately failed, because there was no basis for these dispute letters in the first place).

134. Meanwhile, Kevin Mason, Chantel Grant, and GM Law Firm sat back for years and simply hoped that Casey White's private student loan creditor(s) did not file collection lawsuits against her or her so-signor mother and "program" client, Patricia Crimmins, for them defaulting on these loan obligations.

135. These actions were grossly unreasonable, and they violated the professional duty of care that Kevin Mason, Chantel Grant, and GM Law Firm owed to their clients, Casey White and Patricia Crimmins.

136. Based upon this professional negligence cause of action against these attorneys and law firm Defendants, Kevin Mason, Chantel Grant, and GM Law Firm, Casey White and Patricia Crimmins demand a judgment against these Defendants, jointly and severally, for: all actual damages suffered as a result of the negligence of these Defendants; all consequential damages suffered as a result of the negligence of these Defendants; a refund of all monies paid to these Defendants, with pre-and-post judgment interest; all attorney's fees; and all costs of litigation.

## <u>COUNT FOUR – BREACHES OF THE DUTY OF GOOD FAITH AND FAIR DEALING AGAINST DEFENDANTS, KEVIN MASON; CHANTEL GRANT; AND GM LAW FIRM, LLC</u>

137.   Casey White and Patricia Crimmins incorporate, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

138.   Defendants, Kevin Mason, Chantel Grant, and GM Law Firm, have violated the duty of good faith and fair dealing that is implicit in all contracts to be performed in whole, or in part, in the states of Virginia and Florida. Kevin Mason, Chantel Grant, and GM Law Firm have assumed the original legal services agreement that Resolvly and NLSS sold to Casey White and Patricia Crimmins in early October 2016, with the closing of this sale being consummated effective December 6, 2016. Further, Defendants Kevin Mason, Chantel Grant, and GM Law Firm have all profited from their concerted frauds and legal malpractice perpetuated against Casey White and Patricia Crimmins. These fraudulent and negligent acts also constitute violations of the duty of good faith and fair dealing that Kevin Mason, Chantel Grant, and GM Law Firm owed to their clients, Casey White and Patricia Crimmins.

139.   Moreover, the Benjamin Zuckerman-drafted Legal Services Agreement between Kevin Mason, Chantel Grant and GM Law Firm, and the Plaintiffs in this action contains provisions that are in bad faith and that are unfair dealing between attorneys and their client.

140.    Among these intentional and unfair terms, snuck into this legal services agreement in bad faith, are requirements that the attorney, at his or her sole discretion, will decide whether to pursue litigation against third-parties, with no control given to the clients over this decision.

141.    In addition, Defendants, Kevin Mason, Chantel Grant, and GM Law Firm have committed willful breaches of the duty of good faith and fair dealing owed to Casey White and Patricia Crimmins when they unlawfully, and dishonestly, aided in the Enterprise's solicitation and collection of advanced-fees that are unreasonable and that violate the Federal Trade Commission's Telemarketing Sales Rules.

142.    As a sole and proximate result of these breaches of the duty of good faith and fair dealing on the part of Defendants, Kevin Mason, Chantel Grant, and GM Law Firm, Casey White and Patricia Crimmins demand a judgment against these Defendants, jointly and severally, for: all actual damages suffered as a result of Defendants' wrongful and dishonest conduct; a refund of all client-monies charged by the Defendants, with pre-and-post judgment interest; all attorney's fees; costs of litigation; and punitive damages.

**COUNT FIVE – VIOLATIONS OF THE FLORIDA DECEPTIVE AND
UNFAIR TRADE PRACTICES ACT (FDUTPA), SECTIONS 501.201-.213,
FLORIDA STATUTES, AGAINST ALL DEFENDANTS**

143.    Casey White and Patricia Crimmins incorporate, by reference, the
facts pleaded in the preceding paragraphs of this Complaint.

144.    All named Defendants in this action have violated the FDUTPA's
prohibitions on unfair and deceptive marketing related to the student loan debt
elimination "program" at issue in this lawsuit.

145.    The FDUTPA is intended to "protect the consuming public and
legitimate business enterprises from those who engage in unfair methods of
competition, or unconscionable, deceptive, or unfair acts or practices in the
conduct of any trade or commerce." § 501.202(2). *See also* Delgado v. J.W.
Courtesy Pontiac GMC-Truck, Inc., 693 So.2d 602, 605-06 (Fla. 2d DCA 1997)
(discussing the purpose of FDUTPA in light of its legislative history).

146.    A deceptive practice is one that is "likely to mislead" consumers.
Davis v. Powertel, Inc., 776 So.2d 971, 974 (Fla. 1st DCA 2000).

147.    An unfair practice is "one that offends established public policy and
one that is immoral, unethical, oppressive, unscrupulous or substantially injurious
to consumers." Samuels v. King Motor Co. of Fort Lauderdale, 782 So.2d 489, 499
(Fla. 4th DCA 2001).

148.   A consumer claim for damages under FDUTPA has three elements: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages.

149.   The student loan debt elimination "program" at issue in this lawsuit has engaged in deceptive and unfair practices toward Casey White and Patricia Crimmins. The deceptive and unfair practices, as described in this Complaint, relate to the unlawful and unethical advanced-fees charged to the Plaintiffs for telemarketed debt relief services and the misrepresentations made to them about the "program" leading to complete student loan debt elimination.

150.   It was reasonably foreseeable to each Defendant in this action that their respective participation and involvement in the student loan debt elimination "program" at issue in this lawsuit would cause harm to clients of the program law firm(s) involved, like GM Law Firm.

151.   The deceptive and unfair practices at issue in this lawsuit have directly caused severe, and actual, financial harm to the Plaintiffs.

152.   As a sole and proximate result of these violations of the FDUTPA on the part of all named Defendants, Casey White and Patricia Crimmins demand a judgment against these Defendants, jointly and severally, for: all actual damages suffered as a result of Defendants' wrongful and dishonest conduct; a refund of all client-monies charged by the Defendants, with pre-and-post judgment interest; all attorney's fees; and costs of litigation.

## COUNT SIX – NEGLIGENT SUPERVISION AS TO DEFENDANT
## BERGER SINGERMAN LLP, ONLY

153.   Casey White and Patricia Crimmins incorporate, by reference, the facts pleaded in the preceding paragraphs of this Complaint.

154.   Berger Singerman owed a duty in tort to the clients of the student loan debt elimination "program," like Casey White and Patricia Crimmins, to reasonably supervise the activities of its law partner, Benjamin Zuckerman, as it relates to Benjamin Zuckerman's provision of legal services to the student loan debt elimination "program" Enterprise at issue in this action.

155.   It was foreseeable, or it should have been foreseeable, to Berger Singerman management that the manner, and substance, of the legal services that its law partner, Benjamin Zuckerman, provided to the student loan debt elimination "program" Enterprise at issue in this action would necessarily have a great impact on the clients of that "program," like Casey White and Patricia Crimmins.

156.   Berger Singerman failed to reasonably supervise its partner, Benjamin Zuckerman, as it relates to Benjamin Zuckerman's involvement with the other Defendants in this action, and their illegal, advance fee, student loan debt elimination "program".

157.   Benjamin Zuckerman, as an agent of Berger Singerman, has crossed the line repeatedly of lawful and ethical representation of his clients, Gregory Fishman, Julie Queler, Resolvly, LLC, National Legal Staffing Support, JG Factor,

Kevin Mason, P.A./GM Law Firm – and the entire RICO Enterprise, itself, as described in this Complaint.

158.   Benjamin Zuckerman, an agent of the Berger Singerman law firm at all relevant times, actively assisted this RICO Enterprise, for a profit, by providing the business-law and other legal services required for this RICO Enterprise to continue to operate, gin profits, and avoid civil and criminal liability.

159.   Benjamin Zuckerman's, and Berger Singerman's relationship to Gregory Fishman and Julie Queler goes back, at least, to the prior Fishman and Queler illegal "credit repair" RICO Enterprise of Debt Be Gone, LLC, for which Benjamin Zuckerman served as registered agent, along with its general counsel.

160.   Further, Benjamin Zukerman provided valuable business referrals to third-parties, like RAM, the ACH payment processor for this Enterprise, to enable the illegal profits from this RICO Enterprise to flow.

161.   Benjamin Zuckerman, as an agent of the Berger Singerman law firm, actively participated – and still participates – in this RICO Enterprise by providing legal advice aimed at furthering the knowingly illegal activities of the RICO Enterprise.

162.   Gregory Fishman, as will be proven through discovery in this matter, would openly brag to his employees at NLSS, Resolvly, and GM Law Firm, that he was not worried about getting sued by ripped-off clients, or anyone else for that

matter because he has "the Perry Mason" (referring to Benjamin Zuckerman) of attorneys working for him.

163.   Berger Singerman failed to reasonably supervise Benjamin Zuckerman and to prevent Benjamin Zuckerman from actively participating in the RICO Enterprise at issue in this Complaint, despite Debt Be Gone having faced similar legal troubles for violations of the FTC's Telemarketing Sales Rules. This negligent supervision and retention directly caused Casey White and Patricia Crimmins financial and hedonic injury.

164.   As a sole and proximate result of Berger Singerman's negligent supervision of the activities of its law partner Benjamin Zuckerman as it related to the student loan debt elimination "program" at issue in this action, Casey White and Patricia Crimmins demand a judgment against Berger Singerman for: all actual damages suffered as a result of Defendants' wrongful and dishonest conduct; a refund of all client-monies charged by the Defendants, with pre-and-post judgment interest; all attorney's fees; and costs of litigation.

**PRAYER FOR RELIEF**

165.   Casey White and Patricia Crimmins request that this Court enter a judgment against Defendants and in favor of them, and award the following relief:

a.      that the conduct described in this Complaint be declared, adjudged and decreed to be unlawful;

b.      award them appropriate relief, including actual damages, statutory

damages, treble damages, punitive damages, and restitutionary

disgorgement;

c.      award all costs of prosecuting the litigation, including expert fees;

d.      award pre-and-post-judgment interest;

e.      award attorneys' fees; and

f.      grant such additional relief as this Court may deem just and proper.

CASEY WHITE and PATRICIA CRIMMINS
*The Plaintiffs*

*/s/ Joshua S. Horton*
The Joshua S. Horton Law Firm, PA
Attorney for Defendants
210 South Olive Avenue Suite 300-A
West Palm Beach, FL 33401
470-705-7215 - Telephone
Email: josh@joshuahorton.attorney
Florida Bar No: 1009130

/s/ Macy D. Hanson
MACY D. HANSON
*(Pro Hac Vice* application
forthcoming*)*
Miss. Bar No. 104197
**The Law Office of Macy D. Hanson,
PLLC**
102 First Choice Drive
Madison, Mississippi 39110
Telephone: (601) 853-9521
Facsimile: (601) 853-9327
macy@macyhanson.com

*ATTORNEYS FOR THE PLAINTIFFS*