# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA
### Ft. Lauderdale Division

| | |
|---|---|
| Casey M. White; Patricia A. Crimmins; Nathan Montalvo; Lindsey Crits; Evan Wendt; Elizabeth Ripoli; and Jennifer Coley | Civil Action No. 9:21-cv-80896-AHS (Matthewman) |
| Plaintiffs, | |
| v. | |
| GM Law Firm, LLC | |
| Defendant. | |

## THE PLAINTIFFS' RESPONSE IN OPPOSITION TO [DE 240] MOTION FOR SUMMARY JUDGMENT AS TO COUNT I

THE PLAINTIFFS, named above, submit this Response in Opposition to [DE 240] Motion for Summary Judgment as to Count I, and show as follows:

### Preliminary Statement

First, GM Law Firm's [DE 240] Motion for Summary Judgment as to Count I, like its prior [DE 226] Motion for Rule 11 Sanctions, completely misses the mark on when the Plaintiffs' four years to file their breach of fiduciary duty claims began to run (the accrual date). Second, GM Law Firm's [DE 240] Motion for Summary Judgment also misses the mark on how GM Law Firm, and its legal outsourcing staffing agent, National Legal Staffing Support, pushed back the running of the statute of limitations on the Plaintiffs' breach of fiduciary duty

claims in this action through their continual wrongful, tortious, conduct toward the Plaintiffs. Third, and finally, GM Law Firm's [DE 240] Motion for Summary Judgment misses the mark on the fact that the Plaintiffs' breach of fiduciary duty claims are founded upon fraud – and the delayed discovery doctrine applies to them.

At a minimum, genuine issues of material fact exist on these issues that preclude the Court from granting GM Law Firm's [DE 240] Motion for Summary Judgment under the applicable standard of review for Rule 56 motions. GM Law Firm's [DE 240] Motion for Summary Judgment as to Count I must be denied.

1. **The Plaintiffs' breach of fiduciary duty claims did not accrue until 48 months after they entered into their legal services agreements with GM Law Firm, f/k/a Kevin Mason, P.A.**

   a) *The Plaintiffs were promised private student loan debt resolution within 48 months of enrollment. The Plaintiffs' injuries caused by GM Law Firm's false promises did not accrue until 48 months after their first "program" payments were made.*

The Plaintiffs' breach of fiduciary duty claims are based on the representation that GM Law Firm, f/k/a Kevin Mason, P.A., made to the Plaintiffs that they would have their private student loan balances eliminated and/or resolved within 48 months of when they enrolled into the GM Law Firm "program" – for the payment of the "program" fees only. Thus, the Plaintiffs' breach of fiduciary duty claims stemming from GM Law Firm's failure to eliminate and/or resolve the

Plaintiffs' enrolled private student loan debts could not possibly have started to run until this promise was broken.

The "Welcome Files" that GM Law Firm, f/k/a Kevin Mason, P.A., had its agents send to the Plaintiffs[1] are attached to this Response Brief as Exhibit "1". It is important to note that the false promises contained in these **post-contract** "Welcome Files" are consistent with the continued false oral promises and representations of complete student loan debt elimination that the agents of GM Law Firm made to the Plaintiffs for years, throughout their entire time of enrollment in the GM Law Firm student loan debt elimination "program".

According to the "Program Explanation" brochure, sent to the Plaintiffs **after** they executed their legal services agreements with GM Law Firm, f/k/a Kevin Mason, P.A.:

(This space has been intentionally left blank, for formatting purposes).

---

[1] The only exception to this is the pair of mother (co-signor)-daughter (signor) Plaintiffs, Patricia Crimmins and Casey White, who received a Welcome letter *after* enrolling in the "program" from GM Law Firm, signed by Chantel Grant, that promised to resolve the enrolled private student loan debts. This Welcome letter is attached to this Response Brief as Exhibit "2".



The costs of the service are a fixed flat fee that your attorney has allowed you to make monthly installment payments. In order to do this, your attorney utilizes a payment processing company called National Legal Staffing Support. This is the name that will show up on your monthly bank statement. This fee is all that you will have to pay. **Nothing more, nothing less.**

You can expect to be debt free with 39 to 48 months from your first payment. It could be less, but not longer. The reason being is that the litigation process may take shorter because in many cases the banks and their debt collectors settle within the first 12 months of the lawsuit. This is a good thing.

NLSS_000039

Ex. 1, "Program Explanation", at NLSS_000039.

The Plaintiffs, via the "Program Explanation" packet that they were sent from the agents of what is now operating as GM Law Firm *after they executed their legal services agreements*, were explicitly promised that the law firm would have their enrolled student loan debts eliminated no longer than 48 months after the date that they, the Plaintiffs, entered the law firm's student loan debt elimination "program". Ex. 1, "Program Explanation", at NLSS_000039. This means that the Plaintiffs' breach of fiduciary duty claims did not accrue until 48

months after the date that the Plaintiffs, respectively, entered the legal services agreement with what is now operating as GM Law Firm.

b) *The Plaintiffs did not suffer legal injury from this false representation until 48 months after they entered their legal services agreements with what is now operating as GM Law Firm.*

"Disputes over the timeliness of a claim can present three distinct issues. The first is to determine the statutory limitations period applicable to a given cause of action. The second is to determine the event that started the running of the statute of limitations—in other words, to determine when the cause of action *accrued* for purposes of starting the limitations period. And the third is to determine whether a statutory tolling provision existed that suspended the running of the limitations period for any length of time." R.R. v. New Life Cmty. Church of CMA, 303 So. 3d 916, 920 (Fla. 2020).

Section 95.031, Florida Statutes (2019), says that "except as provided in statute, the time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues." Section 95.031(1) continues, saying that "[a] cause of action accrues when the last element constituting the cause of action occurs."

The Plaintiffs did not have their breach of fiduciary duty claims accrue until the promise of complete student loan debt elimination did not get fulfilled within 48 months of the Plaintiffs entering the law firm's "program", respectively. The

Plaintiffs did not sustain injury from these lies until 48 months after they entered their legal services agreements with what is now operating as GM Law Firm. *See* Ex. 1, "Program Explanation", at NLSS_000039; Ex. 2 Welcome letter (as to Plaintiffs Patricia Crimmins and Casey White).

As such, the Plaintiffs had 96 months after the date that they entered their legal services agreements, respectively, with the law firm now operating under the name GM Law Firm, to file their breach of fiduciary duty claims in this action. This is because the Plaintiffs' claims did not accrue until 48 months after entering the legal services agreements; and then the Plaintiffs had 48 months from that accrual date to file their breach of fiduciary duty claims.

The Plaintiffs' breach of fiduciary duty claims are not time barred. There is no dispute that all Plaintiffs filed their breach of fiduciary duty claims within 96 months of when they entered into their legal services agreements (the date of their first payment) with what is now GM Law Firm. GM Law Firm's [DE 240] Motion for Summary Judgment as to Count I must be denied.

**2. The continuing tort doctrine applies to the Plaintiffs' breach of fiduciary duty claims.**

*a) The Plaintiffs, respectively, have four years from the date of the last tortious act that GM Law Firm, or its agents, have committed against them, causing them injury, to have filed their breach of fiduciary duty claims.*

The misrepresentations to the Plaintiffs of promises of complete student loan debt elimination continued for years. These years of continued, purposeful,

misrepresentations constitute continuing torts on the part of GM Law Firm, and its agents. Additionally, GM Law Firm, and its agents', acts of continual and intentional misrepresentation, aimed at luring the Plaintiffs past the four-year statute of limitations, also triggers the doctrine of equitable estoppel.[2]

The continuing tort doctrine is recognized under Florida state law. Halkey-Roberts Corp. v. Mackal, 641 So. 2d 445, 447 (Fla. 2d DCA 1994). "A continuing tort is 'established by continual tortious *acts,* not by continual harmful effects from an original, completed act'." Suarez v. City of Tampa, 987 So. 2d 681, 686 (Fla. 2d DCA 2008) (citing Horvath v. Delida, 540 N.W.2d 760, 763 (Mich. Ct. App. 1995).

The Plaintiffs have alleged years of constant lies and misrepresentations of complete student loan debt elimination throughout their [DE 170] Amended and Consolidated Complaint in this matter that occurred *after* the execution of their respective legal services agreements. Further, the Plaintiffs have attached seven

---

[2] "The preclusive effect of the statutes of limitation can be deflected by. . . the doctrine of equitable estoppel." Fla. Dept. of Health and Rehabilitative Services v. S.A.P., 835 So. 2d 1091, 1096 (Fla. 2002). The doctrine of "[e]quitable estoppel is based on principles of fair play and essential justice and arises when one party lulls another party into a disadvantageous legal position. . . ." Id. It "'is applicable in all cases where one, by word, act or conduct, willfully caused another to believe in the existence of a certain state of things, and thereby induces him to act on this belief injuriously to himself, or to alter his own previous condition to his injury.'" Id. (quoting Major League Baseball v. Morsani, 790 So. 2d 1071, 1076 (Fla. 2001)).

affidavits to this Response Brief to substantiate, and swear to, this fact. *See* Affidavits of the Plaintiffs, Exhibits "3" through "9" to this Response Brief.

Moreover, Gregory Fishman, the manager of National Legal Staffing Support, testified that only **after** the Plaintiffs signed their legal services agreements and completed their welcome calls would they then be sent their Welcome Packets. ("To my knowledge, the only time anybody would get a welcome packet is if they completed their welcome call and have signed the legal services agreement.") *See* p. 63, lines 2-5, Gregory Fishman Deposition Transcript Excerpts, attached as Exhibit "10" to this Response Brief. Thus, the promise of complete student loan debt elimination within 48 months of entering the GM Law Firm program is a promise made to the Plaintiffs after they executed their legal services agreements, along with being made prior to execution of these agreements.

Further substantiating the existence of the post-execution-of-legal-services-agreements breaches of fiduciary duties is the Plaintiffs' Leadtrac notes. The following are illustrative excerpts of the Plaintiffs' Leadtrac[3] notes, produced by GM Law Firm in this action, that show GM Law Firm, and its agents', tortious acts of making intentionally false promises of private student loan debt elimination to

---

[3] Leadtrac is a software program used by GM Law Firm and its outsourcing legal staffing agent, National Legal Staffing Support, to author notes about GM Law Firm, f/k/a Kevin Mason, P.A.'s, private student loan debt elimination clients, like the Plaintiffs.

the Plaintiffs continued, respectively, **years after** the Plaintiffs first entered the

GM Law Firm "program":

### *June 20, 2020, Call Note with Casey White and Patricia Crimmins*

| 06/20/20 rcorley 19 03:58 PM | Status | Bi Weekly completed. After compliance introduction I asked client how is she doing and client said OK. Client said there have been no calls or notices since we last spoke. I said that we have no new updates as creditor is still hoping to collect and has not transferred to any other collection groups. Casey asked how long might this process take for all debts to be resolved. The length of time varies based on communications with each creditor and client. Some accounts are resolved sooner than others. The length of time depends on different variables, and in your case, will SM lump them all together, or try and resolve individually. It's impossible to predict. Then Fiancee got on phone and asked questions. I said that I can respond to Casey or Patricia, but cannot speak directly with fiancee. Casey asked about money that has been paid and why have we not put more pressure on SM to resolve these debts. We are doing everything we can within our legal limits. The only reason we do not push more forcefully for resolution is because SM will think you want to settle and make a ridiculous offer. Though we are not a Debt Settlement company, we will present any offer they make, always with your final approval to accept or reject. If it is a lousy offer, we can understand your rejecting it. Also, because the outstamding amount is so high, their offer, if presented by them will more than likely be unacceptable from your point of view. SM also want you to give up your legal representation so they can pounce full force and try and get past due plus missed payments and additional interest as well. It would be pointless and a waste of money for you to give up on GM Law at this point. I cautioned client to hang in there until resolution is complete, then you can work on having your credit score totally repaired. I reminded client that even if her retainer fee is paid off and there has been no Resolution, we still represent her interests. I said that more than likely, SM has not yet decided towards litigation, and even if that happens, your legal representation (GM Law) is here for you. We have you covered. Client was content on the on the information exchange I said that will follow up with you every two |
|---|---|---|

White000243, attached as Exhibit "11" to this Response Brief.

### *March 26, 2020, Call Note with Casey White*

| | | | |
|---|---|---|---|
| 03/26/20 18 04:18 PM | pmajkowski | General | Spoke to client and addressed her question about will she ever have to pay her creditors? <mark>I explained that we are here to resolve the debt and sometimes that could be a full dismissal and sometimes a partial dismissal.</mark> I explained that at any time she can get an offer for settlement but does not have to accept it, <mark>we would continue pressing on for a full dismissal.</mark> I reminded her how important the call logs are. She mentioned her credit showed closed/charge off. I told her she may hear from a collection company |

White000266, attached as Exhibit "12" to this Response Brief.

### *September 25, 2019, Call Note with Lindsey Crits*

9/25/2019 16:08        rcorley   Status   Bi Weekly completed. After compliance introduction I asked client how is she doing? Pretty good, it's been a little slow as I have received any calls or notices  from disputed debt. There has been no updates on our end to report. <mark>We are still pursuing Dismissal and I will continue to follow up with you until we have resolution.</mark> No questions from Ms. Crits. Feel free to call rdirectly if anything comes up before that time.  RC

Crits000287, attached as Exhibit "13" to this Response Brief.

### *July 23, 2018, Call Note with Evan Wendt*

7/23/2018 17:11 dcanderson Status Bi Weekly Complete: Client called back. He said he received my message earlier. He stated no letters, calls or emails. Told client to continue monitoring your phone and your mailbox for ANY escalated collection activity. <mark>Producing Documentation will help move your case along & provide better results. Call logs help us achieve more desirable resolutions to your debt.</mark> Never call them back if they call, any communication with your creditors will come from you attorney. Discussed payments. Client had a question in regards to the payment day & wanted to make sure so he can put the money in his account by Thursday he stated. No questions or concerns at this time.

Wendt000199, attached as Exhibit "14" to this Response Brief.

### *June 2, 2017, Call Note with Jennifer Coley*

6/2/2017 15:40 justinsantiago   Status   Bi monthly complete. Client stated she has not received any calls, leters, or emails. Client stated she has not seen any changes to her credit report recently. Provided status update. <mark>Client wanted to know is there anything we can do to stop the interest from increasing on her debts. I explained to the client that it is part of the process and there is nothing we can do to stop them from the increases on the debts. I explained to the client the attorney will try to have the debt dismissed or get the best partial dismissal on her behalf.</mark> Client understood. No questions or concerns at this time. Duration: 04:04

Coley000477, attached as Exhibit "15" to this Response Brief.

*March 22, 2018, Call Note with Elizabeth Ripoli*

3/22/2018 9:52 tmoise  General Called the client about the email she sent with the credit report information. Informed the client that I was unable to locate the ""needs atention "" on the report but that I see that the credit was updated with consumer dispute resolved. Client asked why the information would be important. Advised the client that it may assist if she was having a lender look at her credit they would be able to see that she has been disputing the debt. Client understood. Informed the client that in the email she did mention about the score dropping. Informed the client that even though NVT&nbsp stated on the credit report that they would not be collecting on the debt they are still adding to the balance. Informed the client that once the accounts are resolved the information would be adjusted to reflect the outcome and the balance would not hold the same penalty. The debt to credit ratio would change. Client stated that this is making more sense. Client stated that she has the needs atention in a screenshot and will be sending it to us as soon as she can. Client had no additional questions at this time&nbsp

Ripoli000389, attached as Exhibit "16" to this Response Brief.

*October 14, 2019, Call Note with Nathan Montalvo*

10/14/2019 16:13      dcanderson      Status   Bi Weekly Complete: Client stated that he has not received anything from any of his creditor's. He receives balances and statements from his debit card. He also mentioned he paid off one of his credit cards so that should make things better. I confirmed to make sure it is not one of the debts we are working on, he stated no. I told him that we are diligently working on his case to resolve his accounts and the attorney goals is to get it fully dismissed and to get him the goal that he desire and deserves.

Montalvo000423, attached as Exhibit "17" to this Response Brief.

As seen above, GM Law Firm had its agents continually misrepresent the true nature of the GM Law Firm private student loan debt elimination "program" to the Plaintiffs in their bi-weekly telephone calls for years. There was no debt dismissal nor any debt resolution for any of the seven Plaintiffs, as continually promised by GM Law Firm, and its staffing agents. The continuing tort doctrine applies to the Plaintiffs' breach of fiduciary duty claims in this case. Accordingly,

the Plaintiffs' breach of fiduciary duty claims are not time barred. At a minimum,

genuine issues of material fact exist on this point that preclude the Court from

granting GM Law Firm's [DE 240] Motion for Summary Judgment as to Count I.

      b) *Alternatively, the Plaintiffs, respectively, had four years from the date of the last (illegal) payment collected by GM Law Firm, since the collection of each (illegal) payment from the Plaintiffs constitutes a separate, continually occurring, tortious act.*

Congress directed the FTC to prescribe rules prohibiting abusive and

deceptive telemarketing acts or practices under the Telemarketing Act, 15 U.S.C.

§§ 6101-6108. The FTC adopted the original Telemarketing Sales Rules ("TSR")

in 1995, extensively amended it in 2003, and amending certain provisions

thereafter. 16 C.F.R. Part 310.

GM Law Firm is a "seller" or "telemarketer" engaged in "telemarketing", as

defined by the TSR. 16 C.F.R. § 310.2(dd), (ff), and (gg). Under the TSR, a

"seller" means any person who, in connection with a telemarketing transaction,

provides, offers to provide, or arranges for others to provide goods or services to a

customer in exchange for consideration. 16 C.F.R. § 310.2(dd). A "telemarketer"

means any person who, in connection with telemarketing, initiates or receives

telephone calls to or from a customer or donor. 16 C.F.R. § 310.2(ff).

"Telemarketing" means a plan, program, or campaign which is conducted to

induce the purchase of goods or services or a charitable contribution, by use of one

or more telephones and which involves more than one interstate telephone call. 16 C.F.R. § 310.2(gg).

GM Law Firm is a seller or telemarketer of "debt relief services", as defined by the TSR. 16 C.F.R. § 310.2(o). Under the TSR, a "debt relief service" means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector. 16 C.F.R. § 310.2(o).

The TSR prohibits sellers and telemarketers, like GM Law Firm and its agents, from requesting or receiving payment of any fees or consideration for any debt relief service until and unless:

a. The seller or telemarketer has renegotiated, settled, reduced, or otherwise altered the terms of at least one debt pursuant to a settlement agreement, debt management plan, or other such valid contractual agreement executed by the customer; **and**

b. The customer has made at least one payment pursuant to that settlement agreement, debt management plan, or other valid contractual agreement between the customer and the creditor; and to the extent that debts enrolled in a service are

renegotiated, settled, reduced, or otherwise altered individually, the fee or consideration either:

   i. Bears the same proportional relationship to the total foe for renegotiating, settling, reducing, or altering the terms of the entire debt balance as the individual debt amount bears to the entire debt amount. The individual debt amount and the entire debt amount are those owed at the time the debt was enrolled in the service; or

   ii. Is a percentage of the amount saved as a result of the renegotiation, settlement, reduction, or alteration. The percentage charged cannot change from one individual debt to another. The amount saved is the difference between the amount owed at the time the debt was enrolled in the service and the amount actually paid to satisfy the debt.

  16 C.F.R. § 310.4(a)(5)(i).

  The TSR prohibits sellers and telemarketers from misrepresenting, directly or by implication, any material aspect of any debt relief service, including, but not limited to, the amount of money or the percentage of the debt amount that a customer may save by using the service. 16 C.F.R. § 310.3(a)(2)(x).

  All the GM Law Firm, f/k/a Kevin Mason, P.A., legal services agreements of the Plaintiffs involve the payment of years of monthly payments, up front, and prior to and without regard for any of the results achieved by GM Law Firm. DE

170, Exhibits 1-6, at Section 5 (in each legal services agreement). All the fees that GM Law Firm, or its agents, charged to the Plaintiffs in this action violated the TSR. GM Law Firm did not eliminate, settle, renegotiate, reduce, or otherwise change the terms of any of the Plaintiffs' enrolled student loans in the GM Law Firm "program". GM Law Firm has presented no evidence that it has eliminated or reduced any of the Plaintiffs' enrolled private student loan debt.

Consequently, each (illegal and excessive) monthly installment payment that GM Law Firm collected from the Plaintiffs constitutes a separate, continually occurring, tortious act that has caused the Plaintiffs injuries. The Plaintiffs had four years from the date of the last payment collected by GM Law Firm to file their breach of fiduciary duty claims. These claims are not time barred.

### 3. Alternatively, the Plaintiffs' breach of fiduciary duty claims are founded upon fraud – and the delayed discovery doctrine applies to them.

The Plaintiffs' breach of fiduciary duty claims – founded upon the fraudulent conduct of GM Law Firm and its agents – are not time-barred because they fall within the delayed discovery doctrine under Florida law. The Plaintiffs' breach of fiduciary duty claims are intentional tort claims sounded in fraud. *See* [DE 170] Consolidated and Amended Complaint, generally; *see also,* Id., at Paragraphs 44-45; 47-51; 54; 55; 60-61; 64-67; 71-72; 75-79; 83-84; 87-91; 96-97; 99-101; 105-106; 109-112; 116; 123; 128; 133; 138; 143; 148. The breach of

fiduciary duty claims against the Plaintiffs' former law firm, GM Law Firm f/k/a Kevin Mason, P.A., properly understood, are a species of fraud. Fundamentally, this case is about the Plaintiffs being intentionally lied to by the enrolling telemarketing sales agents of the law firm – now operating as GM Law Firm – and then *continued to be lied to for years by GM Law Firm, and its agents, after entering into the attorney-client relationship* with the Defendant until the Plaintiffs discovered out the truth: that there is no student loan debt elimination "program" that actually leads to the elimination of the clients' enrolled student loan debts[4].

The Plaintiffs' intentional tort breach of fiduciary duty claims, as pleaded, are legal actions founded upon fraud, consistent with Florida Statutes section 95.11(3)(j). The case of <u>Tejera v. Lincoln Lending Servs.</u>, LLC, 271 So. 3d 97 (Fla. 3d DCA 2019) is particularly on point to this issue.

"While fraud claims are subject to a four-year statute of limitations (see section 95.11(3), Fla. Stat. (2009)), when that four-year limitations period *begins to run* depends upon the application of the delayed discovery doctrine. The Florida Legislature enacted section 95.031(2)(a), which codified the delayed discovery doctrine, and provides:

---

[4] These dates are pleaded in Paragraph 114 of the [DE 170] Amended and Consolidated Complaint.

***An action founded upon fraud*** under s. 95.11(3), including constructive

fraud, must be begun within the period prescribed in this chapter, ***with the period***

***running from the time the facts giving rise to the cause of action were discovered***

***or should have been discovered with the exercise of due diligence***, instead of

running from any date prescribed elsewhere in s. 95.11(3), but in any event an

action for fraud under s. 95.11(3) must be begun within 12 years after the date of

the commission of the alleged fraud, regardless of the date the fraud was or should

have been discovered." Tejera v. Lincoln Lending Servs., LLC, 271 So. 3d 97, 100

(Fla. 3d DCA 2019) (emphasis in original).

As the Third District Court for the Court of Appeals held in Tejera, "... the

discrete question presented is whether [the cause of action] is an 'action founded

upon fraud,' which is key to determining the applicability of delayed discovery

doctrine. Indeed, this much is clear from the Florida Supreme Court's discussion

in *Monahan*." Id.

Thus, the Tejera Court reasoned, the holding of Davis v. Monahan, 832 So.

2d 708 (Fla. 2002), only stands for the proposition that the delayed discovery

doctrine did not apply to the breach of fiduciary claims *in that case*, as pleaded,

because the Plaintiff in that case did not allege claims founded in concepts of

fraud.

"In *Monahan*, the plaintiff filed suit against her sister and niece,
alleging claims for 'breach of fiduciary duty, civil theft, conspiracy,

conversion and unjust enrichment, arising from the wrongful taking of cash, stocks, bonds, interest, dividends, and pension and social security payments.' The question presented was 'whether the delayed discovery doctrine, which delays the commencement of the statute of limitations, is applicable to these causes of action.'

The Florida Supreme Court held:

The delayed discovery doctrine does not apply **to the claims alleged in this case**. The Florida Legislature has stated that a cause of action accrues or begins to run when the last element of the cause of action occurs. **An exception is made for claims of fraud** and products liability in which the accrual of the causes of action is delayed until the plaintiff either knows or should know that the last element of the cause of action occurred. (Emphasis added.)

Importantly, the Court did not hold that the delayed discovery doctrine is inapplicable to *every* claim of civil conspiracy, noting that the doctrine did not apply in the instant claim because 'Monahan *did not allege fraud*, so there was no specific allegation that [the defendants'] actions caused Monahan's delayed discovery.' (emphasis added). This analysis was followed in *Young v. Ball*, 835 So. 2d 385, 386 n.3 (Fla. 2d DCA 2003), in which our sister court held that the delayed discovery doctrine did not apply to the plaintiff's claim for civil conspiracy, noting: 'On appeal, all parties address Young's causes of action as if they sounded in fraud. However, the complaint alleges civil conspiracy *and does not mention fraud*.' *Id.* at 386 n.3 (emphasis added).

This much is implicit in the *Monahan* and *Young* decisions: the mere fact that the claim is framed as a civil conspiracy (and therefore subject to a four-year statute of limitations) does not end the analysis. The next and separate question is when did that four-year limitations period *begin to run*? In answering that question, we must determine whether the claim as alleged is an 'action founded upon fraud.' We answer that question in the affirmative, and hold that the trial court erred in dismissing count 21 with prejudice based upon the expiration of the statute of limitations."

<u>Tejera</u>, 271 So. 3d 97, at 100-01 (Fla. 3d DCA 2019).

The Plaintiffs have pleaded intentional breach of fiduciary duty claims founded upon fraud in their [DE 170] Amended and Consolidated Complaint. *See* Amended and Consolidated Complaint, [DE 170], generally, and at Paragraphs 115; 116.

The allegations in Paragraphs 115 and 116 of the [DE 170] Amended and Consolidated Complaint have been proven true by the "Welcome Files" that GM Law Firm, f/k/a Kevin Mason, P.A.'s, legal outsourcing staffing support agent, National Legal Staffing Support, sent to the Plaintiffs in this action **after** they executed their legal services agreements with the law firm. Ex. 1, "Program Explanation", at NLSS_000039.

These false promises, above, continued for years in the Plaintiffs' bi-weekly telephone follow up calls, until the Plaintiffs finally severed their attorney-client relationship with GM Law Firm, these are the knowing misrepresentations made by the agents of what is now GM Law Firm, reasonably relied upon by the Plaintiffs/clients of the law firm, and by which damages were proximately caused to the Plaintiffs. *See* Affidavits of Plaintiffs, Exs. 3-9; *see also,* Leadtrac Note Excerpts, Exs. 11-17.

 As the Second District Court of Appeals pointed out in the case of <u>Flanzer v. Kaplan</u>, "... the uses of the prepositions '*founded upon* fraud' and '*founded on* fraud' in sections 95.031(2)(a) and 95.11(3)(j), respectively, plainly

countenance a broader class of claims than merely actions alleging fraud in general. As such, we see no reason why section 95.031(2)(a) would not apply to Flanzer's claim—provided that Flanzer otherwise satisfies the requirements of that section." <u>Flanzer v. Kaplan</u>, 230 So. 3d 960, 962 (Fla. 2d DCA 2017).

The delayed discovery doctrine applies to the Plaintiff's fraud-based breach of fiduciary duty claims in this case. As such, the Plaintiffs had four years from the dates provided in Paragraph 114 of the [DE 170] Amended and Consolidated Complaint to file their breach of fiduciary duty claims in this action. These claims are not time barred.

<u>CONCLUSION</u>

The Plaintiffs, for the sake of clarity and convenience of the Court, have created and attached a Summary Chart of Relevant Dates re: the Statute of Limitations on their Breach of Fiduciary Duty Claims to this Response Brief. This Summary Chart is attached to, and incorporated into, this Response Brief as Appendix "1".

For the reasons stated in this Response Brief and considering that all disputed facts must be viewed in the light most favorable to the non-moving party under the applicable standard of review for Rule 56 motions, GM Law Firm's [DE 240] Motion for Summary Judgment as to Count I must be denied.

THIS, the 5th day of June, 2023.

*The Plaintiffs*

*/s/ Joshua S. Horton*
The Joshua S. Horton Law Firm, PA
Attorney for the Plaintiffs
107 Pond Apple Lane # 102
Jupiter, FL 33458
561-764-4041 - Telephone
561-584-5212 – Facsimile
Email: josh@joshuahortonlaw.com
Florida Bar No: 1009130

/s/ Macy D. Hanson
MACY D. HANSON
*(Pro Hac Vice)*
Miss. Bar No. 104197
**The Law Office of Macy D. Hanson,
PLLC**
102 First Choice Drive
Madison, Mississippi 39110
Telephone: (601) 853-9521
Facsimile: (601) 853-9327
macy@macyhanson.com

*ATTORNEYS FOR THE PLAINTIFFS*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 5th day of June 2023, I electronically filed

the foregoing with the Clerk of the Court using CM/ECF. I also certify that the

foregoing is being served this day on counsel of record either via transmission of

Notices of Electronic Filing generated by CM/ECF or in some other authorized

manner for those who are not authorized to receive Notices of Electronic Filing.

*/s/ Joshua S. Horton*

The Joshua S. Horton Law Firm, PA
Attorney for the Plaintiffs
107 Pond Apple Lane # 102
Jupiter, FL 33458
561-764-4041 - Telephone
561-584-5212 – Facsimile
Email: josh@joshuahortonlaw.com
Florida Bar No: 1009130