UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-80896-SINGHAL/MATTHEWMAN

CASEY M. WHITE, et al.,

       Plaintiffs,

v.

GM LAW FIRM, LLC,

       Defendant.

_____/

FILED BY _____SW_____ D.C.

Dec 13, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AS TO COUNT I [DE 240]

**THIS CAUSE** is before the Court upon an Order of Reference from the Honorable United States District Judge Raag Singhal [DE 271] for entry of a Report and Recommendation on Defendant, GM Law Firm, LLC's Motion for Summary Judgment as to Count I ("Motion") [DE 240]. The Motion is fully briefed, and the parties have filed their statements of undisputed facts and responses thereto. *See* DEs 241, 246, 247, 259, 260. The Court heard argument on the Motion on December 7, 2023. This matter is now ripe for review.

### I.     BACKGROUND

On May 18, 2021, Plaintiffs Casey M. White and Patricia A. Crimmins filed their Complaint against several defendants, including Defendant GM Law Firm, LLC ("Defendant"). [DE 1]. This case was later consolidated with a related case, Case No. 21-cv-81127-AHS. [DE 85]. Ultimately, after a great deal of motion practice, only Defendant GM Law Firm, LLC remained as a defendant in this case. *See* DE 167; 168; 169; 172.

On November 22, 2022, Plaintiffs, Casey M. White, Patricia A. Crimmins, Nathan Montalvo, Lindsey Crits, Evan Wendt, Elizabeth Ripoli, and Jennifer Coley ("Plaintiffs") filed an

Amended Complaint against Defendant GM Law Firm, LLC [DE 170, Am. Compl]. The Amended

Complaint alleges breach of fiduciary duty (Count One) and rescissions of contract and return of

fees paid (Count Two). *Id.* Of note, there is a section of the Amended Complaint titled "Tolling of

the Applicable Statutes of Limitations," which alleges as follows:

> 114. Plaintiffs had no way of knowing the true nature and extent of Defendants' illegal advance-fee "student loan debt elimination" telemarketing scheme necessary to prosecute their claims until the following dates, respectively: Casey White and Patricia Crimmins, July 19, 2019; Nathan Montalvo, February 24, 2021; Lindsey Crits, early October 2019 (the date of service of the state court collection suit against her); Evan Wendt, October 2018; Elizabeth Ripoli, December 2018; and Jennifer Coley, December 2018.

> 115. GM Law Firm was under a continuous and constant duty to disclose to the Plaintiffs the true character, quality, and nature of the legal representation, and other "student loan debt elimination" services that it, and its agents, was providing.

> 116. GM Law Firm, and its agents, knowingly and actively concealed their illegal advance fee "student loan debt elimination" telemarketing scheme, and the Plaintiffs reasonably and detrimentally relied upon Defendant's knowing and active concealment. Plaintiffs, respectively, had no way of knowing the true character, quality, and nature of the legal representation for which they had been charged prior to the dates, listed above.

> 117. Accordingly, the applicable statutes of limitations have been tolled by operation of the discovery rule and Defendant's concealment with respect to all claims pleaded in this Amended Complaint. Due to this, Defendant is estopped from relying on any statutes of limitations in defense of this action.

> 118. Additionally, the statutes of limitations that apply to the claims of Plaintiffs, Evan Wendt, Elizabeth Ripoli, and Jennifer Coley (formerly Ackerman), are also tolled for the period of time that these Plaintiffs were named-Plaintiffs in the matter of *Grijalva v. Kevin Mason, P.A., et al.*, Cause No. 8:18-cv-2010-MCS (DFMx) (C.D. Cal.).

[Am. Compl. ¶¶ 114–118].

Count One of the Amended Complaint alleges as follows:

119. The Plaintiffs, respectively, each plead a breach of fiduciary duty claim against Defendant, GM Law Firm, LLC, in this action.

120. "Under Florida law, the elements of a claim for breach of fiduciary duty are (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damages proximately caused by that breach." *Sutherlin v. Wells Fargo Bank N.A.*, 767 Fed. Appx. 812, 819 (11th Cir. 2019) (citing *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002)).

121. Plaintiffs, Casey White and Patricia Crimmins, re-allege the facts contained in Paragraphs 42-57 of this Amended Complaint.

122. The creation of an attorney-client relationship between Casey White, Patricia Crimmins, and GM Law Firm existed by virtue of the executed Limited Legal Services Agreement that they entered with one another. This attorney-client relationship gave rise to a fiduciary duty that GM Law Firm owed to Casey White and Patricia Crimmins.

123. GM Law Firm breached the fiduciary duty that it owed to Casey White and Patricia Crimmins when its sales agents made false promises of complete student loan debt elimination to Casey White and Patricia Crimmins to get them to execute the GM Law Firm Limited Legal Services Agreement.

124. GM Law Firm breached the fiduciary duty that it owed to Casey White and Patricia Crimmins when it presented an attorney-client retention agreement, the Limited Legal Services Agreement, that contains non-refundable, excessive, advance fee payment terms for telemarketed debt relief services that violate both the TSR of the FTC and Rule 4-1.5 of the Rules Regulating the Florida Bar. These fee terms are illegal.

125. Casey White and Patricia Crimmins have suffered damages as a proximate cause of GM Law Firm's breach of fiduciary duty to them. These damages include out-of-pocket losses, consequential damages for the enrolled student loans going into default, and hedonic damages for stress and damage to their credit histories.

126. Plaintiff, Nathan Montalvo, re-alleges the facts contained in Paragraphs 58-68 of this Amended Complaint.

127. The creation of an attorney-client relationship between Nathan Montalvo and GM Law Firm existed by virtue of the executed Limited Legal Services Agreement that they entered with one another. This attorney-client relationship gave rise to a fiduciary duty that GM Law Firm owed to Nathan Montalvo.

128. GM Law Firm breached the fiduciary duty that it owed to Nathan Montalvo when its sales agents made false promises of complete student loan debt elimination

to Nathan Montalvo to get him to execute the GM Law Firm Limited Legal Services Agreement.

129. GM Law Firm breached the fiduciary duty that it owed to Nathan Montalvo when it presented an attorney-client retention agreement, the Limited Legal Services Agreement, that contains non-refundable, excessive, advance fee payment terms for telemarketed debt relief services that violate both the TSR of the FTC and Rule 4-1.5 of the Rules Regulating the Florida Bar. These fee terms are illegal.

130. Nathan Montalvo has suffered damages as a proximate cause of GM Law Firm's breach of fiduciary duty to him. These damages include out-of-pocket losses, consequential damages for the enrolled student loans going into default, and hedonic damages for stress and damage to his credit history.

131. Plaintiff, Lindsey Crits, re-alleges the facts contained in Paragraphs 69-80 of this Amended Complaint.

132. The creation of an attorney-client relationship between Lindsey Crits and GM Law Firm existed by virtue of the executed Limited Legal Services Agreement that they entered with one another. This attorney-client relationship gave rise to a fiduciary duty that GM Law Firm owed to Lindsey Crits.

133. GM Law Firm breached the fiduciary duty that it owed to Lindsey Crits when its sales agents made false promises of complete student loan debt elimination to her to get her to execute the GM Law Firm Limited Legal Services Agreement.

134. GM Law Firm breached the fiduciary duty that it owed to Lindsey Crits when it presented an attorney-client retention agreement, the Limited Legal Services Agreement, that contains non-refundable, excessive, advance fee payment terms for telemarketed debt relief services that violate both the TSR of the FTC and Rule 4-1.5 of the Rules Regulating the Florida Bar. These fee terms are illegal.

135. Lindsey Crits has suffered damages as a proximate cause of GM Law Firm's breach of fiduciary duty to her. These damages include out-of-pocket losses, consequential damages for the enrolled student loans going into default, and hedonic damages for stress and damage to her credit history.

136. Plaintiff, Evan Wendt, re-alleges the facts contained in Paragraphs 81-92 of this Amended Complaint.

137. The creation of an attorney-client relationship between Evan Wendt and GM Law Firm existed by virtue of the executed Limited Legal Services Agreement that they entered with one another. This attorney-client relationship gave rise to a fiduciary duty that GM Law Firm owed to Evan Wendt.

138. GM Law Firm breached the fiduciary duty that it owed to Evan Wendt when its sales agents made false promises of complete student loan debt elimination to Evan Wendt to get him to execute the GM Law Firm Limited Legal Services Agreement.

139. GM Law Firm breached the fiduciary duty that it owed to Evan Wendt when it presented an attorney-client retention agreement, the Limited Legal Services Agreement, that contains non-refundable, excessive, advance fee payment terms for telemarketed debt relief services that violate both the TSR of the FTC and Rule 4-1.5 of the Rules Regulating the Florida Bar. These fee terms are illegal.

140. Evan Wendt has suffered damages as a proximate cause of GM Law Firm's breach of fiduciary duty to him. These damages include out-of-pocket losses, consequential damages for the enrolled student loans going into default, and hedonic damages for stress and damage to his credit history.

141. Plaintiff, Elizabeth Ripoli, re-alleges the facts contained in Paragraphs 93-102 of this Amended Complaint.

142. The creation of an attorney-client relationship between Elizabeth Ripoli and GM Law Firm existed by virtue of the executed Limited Legal Services Agreement that they entered with one another. This attorney-client relationship gave rise to a fiduciary duty that GM Law Firm owed to Elizabeth Ripoli.

143. GM Law Firm breached the fiduciary duty that it owed to Elizabeth Ripoli when its sales agents made false promises of complete student loan debt elimination to her to get her to execute the GM Law Firm Limited Legal Services Agreement.

144. GM Law Firm breached the fiduciary duty that it owed to Elizabeth Ripoli when it presented an attorney-client retention agreement, the Limited Legal Services Agreement, that contains non-refundable, excessive, advance fee payment terms for telemarketed debt relief services that violate both the TSR of the FTC and Rule 4-1.5 of the Rules Regulating the Florida Bar. These fee terms are illegal.

145. Elizabeth Ripoli has suffered damages as a proximate cause of GM Law Firm's breach of fiduciary duty to her. These damages include out-of-pocket losses, consequential damages for the enrolled student loans going into default, and hedonic damages for stress and damage to her credit history.

146. Plaintiff, Jennifer Coley, re-alleges the facts contained in Paragraphs 103-113 of this Amended Complaint.

147. The creation of an attorney-client relationship between Jennifer Coley and GM Law Firm existed by virtue of the executed Limited Legal Services Agreement that they entered with one another. This attorney-client relationship gave rise to a fiduciary duty that GM Law Firm owed to Jennifer Coley.

148. GM Law Firm breached the fiduciary duty that it owed to Jennifer Coley when its sales agents made false promises of complete student loan debt elimination to her to get her to execute the GM Law Firm Limited Legal Services Agreement.

149. GM Law Firm breached the fiduciary duty that it owed to Jennifer Coley when it presented an attorney-client retention agreement, the Limited Legal Services Agreement, that contains non-refundable, excessive, advance fee payment terms for telemarketed debt relief services that violate both the TSR of the FTC and Rule 4-1.5 of the Rules Regulating the Florida Bar. These fee terms are illegal.

150. Jennifer Coley has suffered damages as a proximate cause of GM Law Firm's breach of fiduciary duty to her. These damages include out-of-pocket losses, consequential damages for the enrolled student loans going into default, and hedonic damages for stress and damage to her credit history.

[Am. Compl. ¶¶ 119–150].

Defendant filed an Answer & Affirmative Defenses to Amended Complaint [Answer, DE 173] on December 5, 2022. Defendant denied Paragraphs 122–125, 127–130, 132–135, 137–140, 142–145, and 147–150. *Id.* at 7–8. It did, however, admit Paragraphs 119–121, 126, 131, 136, 141, and 146. *Id.* With regard to affirmative defenses, Defendant pled in relevant part that "[o]ne or more claims fails to state a cause of action" and that "[o]ne or both claims are time-barred" since the "statute of limitations is not tolled for either count." *Id.* at 9.

## II.     MOTION, RESPONSE, AND REPLY

### A.     Defendant's Motion [DE 240]

Defendant argues that the breach of fiduciary claim is "patently untimely" because the statute of limitations is only four years and the conduct at issue in this case occurred in 2015 or 2016. [DE 240 at 1]. Defendant explains,

The Plaintiffs' contracts were executed and the attorney-client relationship began between April 2015 and December 2016. SOF ¶¶ 2, 6, 10, 14, 18, 22, 26. All Plaintiffs were allegedly injured when, immediately upon executing the agreement, they stopped paying their student loans and started paying the Defendant. SOF ¶¶ 3, 7, 11, 15, 19, 23, 27. Four years from December 2016 (the latest date of the 7 contracts) is December 2020. The Complaint was filed in May 2021.

6

*Id.* at 2. Next, Defendant asserts that Florida law "prohibits the application of the delayed discovery rule" to claims which allege breach of fiduciary duty. *Id.* at 4. Defendant also argues that the allegation by three of the plaintiffs that "the four-year statute of limitation is tolled by virtue of a prior lawsuit that was dismissed without prejudice" should be rejected since the "three Plaintiffs' prior lawsuit is legally irrelevant to the statute of limitations." *Id.* This is because the "filing of a complaint does not toll a statute of limitations when that complaint is subsequently dismissed without prejudice." *Id.*

> B.     Plaintiffs' Response [DE 246]

In response, Plaintiffs first argue that their breach of fiduciary duty claims did not accrue until 48 months after they entered into their legal services agreements since Defendant represented to them that their private student loan balances would be eliminated and/or resolved within 48 months of enrolling. [DE 246 at 2]. Thus, the claims in Count One "could not possibly have started to run until this promise was broken." *Id.* at 3. Furthermore, according to Plaintiffs, they did not suffer from any legal injury from the alleged false representation until 48 months after they entered their legal services agreements. *Id.* at 5. Plaintiffs next argue that the continuing tort doctrine applies to their claims, so they had four years from the last tortious act that Defendant or its agents committed against them. *Id.* at 6. They contend in the alternative that they had four years from the date of the last payment collected by Defendant since the collection of each payment from Plaintiffs constituted a separate continually occurring tortious act pursuant to the Telemarketing Act, 15 U.S.C. §§ 6101-6108. *Id.* at 12.  Plaintiffs also assert that, alternatively, Plaintiffs' breach of fiduciary duty claims are founded upon fraud, and the delayed discovery doctrine under Florida law applies. *Id.* at 15.

C.      Defendant's Reply [DE 259]

In reply, Defendant initially points out that Plaintiffs have improperly alleged new legal theories at the summary judgment stage. [DE 259 at 2]. Defendant maintains that the theory of the case pled in the Amended Complaint was that the "breach occurred either prior to or, at the latest, contemporaneous with the execution of the agreements." *Id.* at 3. Defendant explains that the "post-execution welcome packet and bi-weekly phone calls, which Plaintiffs' twenty-two page response overwhelmingly relies upon, are not mentioned anywhere in the Amended Complaint. Rather, the Amended Complaint solely focuses on promises that were made prior to the execution of the agreement and the fee agreement itself, while the Response relies exclusively on post-execution conduct." *Id.* at 3–4. Next, it points out that the Amended Complaint only alleges Defendant violated the Telemarketing Act prior to execution of the illegal fee agreements, while Plaintiffs are now presenting a continuous tort theory for the very first time. *Id.* at 4. Defendant argues that the continuous tort theory fails on the merits as well. *Id.* at 4–6. It also once again points out that, per Florida law, the delayed discovery doctrine does not apply to claims alleging breach of fiduciary duty. *Id.* at 6–7. Finally, Defendant asserts that Plaintiffs' affidavits are sham affidavits. *Id.* at 7–10.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) states in relevant part that "[a] party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of

demonstrating to the court by reference to the record that there are no genuine issues of material fact that need to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a moving party has discharged its initial burden, the nonmoving party must "go beyond the pleadings," and, by its own affidavits or by "depositions, answers to interrogatories, and admissions on file," identify specific facts showing there is a genuine issue for trial. *Celotex,* 477 U.S. at 324. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding whether summary judgment is appropriate, the Court must view the evidence and all reasonable factual inferences in the light most favorable to the party opposing the motion. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir. 1998) (citations and quotations omitted). Any doubts regarding whether a trial is necessary must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

So long as the non-moving party has had an ample opportunity to conduct discovery, the non-movant must come forward with affirmative evidence to support its claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. 242, 249–50.

"The elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." *Gracey v. Eaker*, 837 So. 2d 348, 353 (Fla. 2002). "[T]he time within which an action shall be begun under

any statute of limitations runs from the time the cause of action accrues." Fla. Stat. § 95.031. And

a "cause of action accrues when the last element constituting the cause of action occurs." Fla. Stat.

§ 95.031(1). "A breach of fiduciary duty claim may be based on negligence or intentional conduct,

but under either alternative, the statute of limitations is four years." *Amato v. City of Miami Beach*,

208 So. 3d 235, 238 (Fla. 3d DCA 2016); *see also* Fla. Stat. § 95.11(3)(p) (stating any action not

specifically provided for in the statutes has a four-year statute of limitations).

## IV.   UNDISPUTED FACTS

The following facts are drawn from the uncontested portions of the record together with

the parties' respective statements of material facts ("SMF") [DEs 241, 247, 260] and supporting

evidence.

In October 2016, Plaintiff Casey M. White allegedly received a telephone call from

someone acting on behalf of Defendant, then known as Kevin Mason, P.A., offering legal services

regarding student loan debt defense. Def's SMF ¶ 1. On December 2, 2016, Plaintiff Casey M.

White executed a legal services agreement with Defendant in which she would pay for Defendant's

representation in matters relating to her student loan debt. Def's SMF ¶ 2. In December 2016,

following execution of the Agreement, Plaintiff Casey M. White made her first payment. Def.'s

SMF ¶ 3. As damages, she seeks a refund of money paid to the Defendant starting in December

2016, as well as an award of punitive damages and attorney's fees in this action. Def.'s SMF ¶ 4;

Pl.'s SMF ¶ 4.

In October 2016, Plaintiff Patricia A. Crimmins allegedly received a telephone call from

someone on behalf of Defendant, then known as Kevin Mason, P.A., offering legal services

regarding student loan debt defense for debt belonging to she and her daughter, Plaintiff Casey M.

White. Def's. SMF ¶ 5. Plaintiff Patricia A. Crimmins executed a Cosigner's Limited Legal

Services Agreement on December 21, 2016, agreeing to become a cosigner to Plaintiff Casey M. White's legal service agreement with the Defendant. Def.'s SMF ¶ 6. In December 2016 following the execution of the Agreement, both Plaintiff Patricia A. Crimmins and her daughter, Plaintiff Casey M. White, began making payments to the Defendant. Def.'s SMF ¶ 7. As damages, they seek a refund of money paid to the Defendant starting in December 2016, as well as an award of punitive damages and attorney's fees in this action. Def.'s SMF ¶ 8; Pl.'s SMF ¶ 8.

On July 14, 2015, Plaintiff Nathan Montalvo allegedly received a telephone call from someone on behalf of Defendant, then known as Kevin Mason, P.A., offering legal services regarding student loan debt defense. Def.'s SMF ¶ 9. On July 14, 2015, and after the telephone call, Plaintiff Nathan Montalvo executed a legal services agreement with Defendant in which he agreed pay for Defendant's representation in matters regarding his student loan debt. Def.'s SMF ¶ 10. In July 2015, Plaintiff Nathan Montalvo stopped paying his loan and began paying the Defendant. Def.'s SMF ¶ 11. As damages, he seeks a refund of money paid to the Defendant starting in July 2015, as well as an award of punitive damages and attorney's fees in this action. Def.'s SMF ¶ 12; Pl.'s SMF ¶ 12.

On September 28, 2015, Plaintiff Lindsey Crits allegedly received a telephone call from someone on behalf of Defendant, then known as Kevin Mason, P.A., offering legal services regarding student loan debt defense. Def.'s SMF ¶ 13. On September 28, 2015, and either after the phone call or contemporaneously with the phone call, Plaintiff Lindsey Crits executed a legal services agreement with Defendant dated September 28, 2015, in which she agreed to pay for Defendant's representation in matters regarding her student loan debt. Def.'s SMF ¶ 14. In September or October 2015, Plaintiff Lindsey Crits stopped paying her loan and made her first payment to the Defendant. Def.'s SMF ¶ 15. As damages, she seeks a refund of money paid to

Defendant starting in September/October 2015, as well as an award of punitive damages and attorney's fees in this action. Def.'s SMF ¶ 16; Pl.'s SMF ¶ 16.

In March 2016, Plaintiff Evan Wendt allegedly received a telephone call from someone on behalf of Defendant, then known as Kevin Mason, P.A., offering legal services regarding student loan debt defense. Def.'s SMF ¶ 17. On March 23, 2016, and after the phone call, Plaintiff Evan Wendt executed a legal services agreement with Defendant in which he would pay for Defendant's representation in matters relating to his student loan debt. *Id*. at Def.'s SMF ¶ 18. On or about March/April 2016[1], Plaintiff Evan Wendt stopped paying his loan and made his first payment to Defendant. Def.'s SMF ¶ 19. As damages, he seeks a refund of money paid to Defendant starting in March/April 2015, as well as an award of punitive damages and attorney's fees in this action. Def.'s SMF ¶ 20; Pl.'s SMF ¶ 20.

On September 24, 2015, Plaintiff Elizabeth Ripoli allegedly received a telephone call from someone on behalf of Defendant, then known as Kevin Mason, P.A., offering legal services regarding student loan debt defense. Def.'s SMF ¶ 21. On September 24, 2015, either immediately after or contemporaneously with the phone call, Plaintiff Elizabeth Ripoli executed the legal services agreement with Defendant in which Plaintiff would pay for Defendant's representation in in matters regarding her student loan debt. Def.'s SMF ¶ 22. In September 2015, Plaintiff Elizabeth Ripoli stopped paying her loan and started paying the Defendant. Def.'s SMF ¶ 23. As damages, she seeks a refund of the money she paid to the Defendant starting in September 2015, as well as an award of punitive damages and attorney's fees in this action. Def.'s SMF ¶ 24; Pl.'s SMF ¶ 24.

---

[1] It appears that there is scrivener's error in Defendant's Statement of Material Facts. Defendant stated that Evan Wendt stopped paying his loan and made his first payment to Defendant in 2015, but it is apparent that Defendant meant to write 2016.

In April 2015, Plaintiff Jennifer Coley allegedly received a telephone call from someone on behalf of Defendant, then known as Kevin Mason, P.A., offering legal services regarding student loan debt defense. Def.'s SMF ¶ 25. On April 17, 2015, and after the telephone call, Plaintiff executed the legal services agreement with Defendant in which Plaintiff would pay for Defendant's representation in matters regarding her student loan debt. Def.'s SMF ¶ 26. In April or May 2015, Plaintiff Jennifer Coley stopped paying her loan and made her first payment to Defendant. Def.'s SMF ¶ 27. As damages, she seeks a refund of money paid to the Defendant starting in April or May 2015, as well as an award of punitive damages and attorney's fees in this action. Def.'s SMF ¶ 28; Pl.'s SMF ¶ 28.

After execution of his or her legal services agreement, Plaintiffs Casey White, Nathan Montalvo, and Lindsey Crits were emailed a "Welcome" letter from Chantel Grant that contained the Welcome letter that is attached to Plaintiffs' Response to Statement of Undisputed Material Facts. Pl.'s SMF ¶¶ 29–32.

## V.     ANALYSIS

### 1.   Counsel's Arguments at the December 7, 2023 Hearing

At the December 7, 2023 hearing on this Motion, Defendant's counsel argued that Defendant filed a motion for summary judgment rather than a motion for judgment on the pleadings on this particular statute of limitations issue concerning Count I because the Amended Complaint did not state when the damages allegedly started for each Plaintiff. Defendant's counsel explained, however, that all seven Plaintiffs testified during their depositions that they were damaged immediately upon executing their agreements with Defendant, and Defendant has provided that deposition testimony as evidence attached to its Motion. Counsel contended that, in light of this evidence, it is clear that the statute of limitations began accruing at the time that the

contracts were executed in 2015 and 2016, and, thus, the statute of limitations had run by the time this federal lawsuit was filed. Further, counsel maintained that the Amended Complaint does not plead a continuous tort, but rather the lawsuit is limited to the time prior to the execution of the contracts and the period when the contracts were executed. In other words, the Amended Complaint alleges that the fiduciary duty that was breached was to not entice Plaintiffs to enter into illegal contracts. Moreover, continuing damages are irrelevant to the continuous tort doctrine.

Plaintiffs' counsel responded at the hearing that, while the delayed discovery doctrine does not universally apply in breach of fiduciary duty cases, the doctrine applies in this lawsuit specifically per *Tejera v. Lincoln Lending Services, LLC*, 271 So. 3d 97 (Fla. 3d DCA 2019). Counsel further argued that the Amended Complaint does plead a continuous tort theory in that it alleges that a new violation occurred every time Defendant collected illegal, tortious payments. Plaintiffs' counsel contended that the statute of limitations on Count I started running either four years after the date of the last payments made by Plaintiffs, or, since Defendant promised results after 48 months, four years after that 48-month period elapsed. Plaintiffs, however, did abandon their argument that the filing of a related lawsuit in a different jurisdiction impacted the statute of limitations as to Count I.

### 2.   Delayed Discovery Doctrine

As an initial matter, the Court must determine whether the delayed discovery doctrine applies here. The Court finds that it does not. The Florida Supreme Court has explained that, "[a]side from the provisions above for the delayed accrual of a cause of action in cases of fraud, products liability, professional and medical malpractice, and intentional torts based on abuse, there is no other statutory basis for the delayed discovery rule." *Davis v. Monahan*, 832 So. 2d 708, 710 (Fla. 2002). In *Davis*, the Florida Supreme Court has specifically declined to extend application of

the delayed discovery doctrine to claims of negligence, breach of fiduciary duty, and conversion. *Id.* at 709. Courts in this district have also declined to apply the delayed discovery doctrine to claims of breach of fiduciary duty. *See, e.g,*, *Falcon v. Bank of Am., N.A.*, No. 1:21-CV-24250, 2022 WL 6745443, at *3 (S.D. Fla. Aug. 19, 2022); *Rodriguez v. Epstein*, No. 20-CV-80257, 2020 WL 13567931, at *1 (S.D. Fla. May 6, 2020); *Arrington v. Hausman*, No. 16-60532-CIV, 2016 WL 11547505, at *6 (S.D. Fla. Nov. 21, 2016), *report and recommendation adopted,* No. 16-60532-CIV, 2017 WL 10775944 (S.D. Fla. Mar. 1, 2017), *aff'd,* 760 F. App'x 705 (11th Cir. 2019).

Plaintiffs maintain that, while the delayed discovery doctrine does not globally apply to breach of fiduciary duty claims, the court's holding in *Tejera v. Lincoln Lending Servs., LLC*, 271 So. 3d 97 (Fla. 3d DCA 2019), supports their position that it should apply in this case at hand.  In *Tejera*, the court noted "[t]here is no freestanding cause of action in Florida for 'civil conspiracy.'" *Id.* at 103. Rather, "[t]he conspiracy is merely the vehicle by which the underlying tort was committed, and the allegations of conspiracy permit the plaintiff to hold each conspirator jointly liable for the actions of the coconspirators." *Id.* The court found that "[t]here can be no doubt that Tejera's claim for conspiracy to perpetrate fraud in the inducement alleges an action founded upon fraud, and this conclusion is buttressed by case law addressing the concept of civil conspiracy in Florida." *Id.* at 101. Thus, *Tejera* is clearly distinguishable from the case at hand because civil conspiracy, under Florida law, must be based upon an underlying independent tort. Breach of fiduciary duty is a freestanding cause of action. Moreover, the law is clear that Florida law does not permit application of the delayed discovery doctrine to breach of fiduciary duty claims.

### 3.   Continuing Tort Doctrine

Plaintiffs next argue that the continuing tort doctrine applies here and negates Defendant's argument that the four-year statute of limitations has run. "The continuing violation doctrine

permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." *Robinson v. United States*, 327 F. App'x 816, 818 (11th Cir. 2007). "The critical distinction in continuing violation analysis...is whether the plaintiff[ ] complain[s] of the present consequence of a one time violation, which does not extend the limitations period, or the continuation of a violation into the present, which does." *Id.* (quoting *Lovett v. Ray,* 327 F.3d 1181, 1183 (11th Cir. 2003)). "When the plaintiff proves a continuing violation, the plaintiff may 'recover for any violations for which the statute of limitations has not expired.'" *Id.* (quoting *Knight v. Columbus, Ga.,* 19 F.3d 579, 581 (11th Cir. 1994)). "A continuing tort is 'established by continual tortious *acts,* not by continual harmful effects from an original, completed act**.**'" *Effs v. Sony Pictures Home Ent., Inc.*, 197 So. 3d 1243, 1245 (Fla. 3d DCA 2016) (quoting *Suarez v. City of Tampa,* 987 So. 2d 681, 686 (Fla. 2d DCA 2008)).

Defendant's argument against the application of the continuing tort theory is twofold. First, it contends that a continuous tort was not properly pled in the Amended Complaint. Second, it argues that the facts of this case could never fit within a continuous tort theory.

At the hearing, Plaintiffs' counsel directed the Court to paragraphs 37 and 38 of the Amended Complaint to show that Plaintiffs sufficiently pled a continuous tort. Those paragraphs allege as follows:

> 37.  All the fees that GM Law Firm, or its agents, charged to the Plaintiffs in this action violated the TSR. GM Law Firm did not eliminate, settle, renegotiate, reduce, or otherwise change the terms of any of the Plaintiffs' enrolled student loans in the GM Law Firm "program". Nonetheless, GM Law Firm charged the Plaintiffs, who it has never met in person, tens of thousands of dollars in disproportionate, unreasonable, and **non-refundable** fees in its Limited Legal Services Agreements with the Plaintiffs.
>
> *Rule 4-1.5 of the Rules Regulating the Florida Bar prohibits the fees contained in the Limited Legal Services Agreement entered between GM Law Firm and the Plaintiffs.*

16

> 38. Rule 4-1.5(a) of the Rules Regulating the Florida Bar states: "An attorney shall not enter into an agreement for, charge, or collect an illegal, prohibited, or clearly excessive fee or cost, or a fee generated by employment that was obtained through advertising or solicitation not in compliance with the Rules Regulating the Florida Bar."

[Am. Compl. ¶¶ 37-38]. Viewing all reasonable factual inferences in the light most favorable to Plaintiffs, as required at the motion for summary judgment stage, the Court does find that a continuous tort was pled—albeit not very clearly. And other than legal argument, Defendant has not provided any evidence to rebut these allegations. Thus, this is not a proper issue for adjudication in favor of Defendant at the summary judgment stage.

Defendant next relies on *Effs, supra*, for the premise that multiple payments by Plaintiffs does not equate to a continuous tort. In that, case, the court determined that "[c]ontrary to Effs' assertion, the tort was not continual in nature merely because Sony Pictures made subsequent distribution payments." *Effs*, 197 So. 3d at 124. Furthermore, "[a]lthough these additional distribution payments could have potentially increased Effs' claimed damages, they did not delay the cause of action from accruing." *Id.* Here, Plaintiffs have alleged that each fee charged was illegally collected. Thus, the facts here are distinguishable from those in *Effs*. The Court rejects Defendant's arguments regarding Plaintiffs' continuous tort theory at this stage in the litigation and finds that application of the continuous tort theory defeats Plaintiffs' argument that the statute of limitations has run as fewer than four years  havepassed between the last installment payment made by each Plaintiff and the filing of this federal lawsuit. The last payments made by each Plaintiff were made between October 2018 and October 2020, and this lawsuit was filed in 2021. *See* DE 246-1. However, the Motion would be due to be denied even if the Court had ruled in favor of Defendant on the continuous tort issue, as explained below.

4.   <u>Statute of Limitations Accrual</u>

Further, and more importantly, even Defendant concedes that the statute of limitations started to accrue here when Defendant allegedly breached a duty such that it was the proximate cause of the plaintiff's damages. In other words, the statute of limitations began to accrue when Plaintiff's damages began to accrue. Here, Defendant relies on the testimony by the Plaintiffs attached to the Motion for the premise that each of their damages began to accrue on that date that each of them entered into a contract with Defendant. However, Plaintiffs' testimony is being oversimplified by Defendant. And, more importantly, Plaintiffs have created an issue of material fact as to when Plaintiffs' damages began to accrue. Plaintiffs have attached to their Response to [Defendant's] Statement of Undisputed Material Facts the Welcome Packet and the Program Explanation received by Plaintiffs [DE 247-11]. That document states that Plaintiffs "can expect to be debt free with[in] 39 to 48 months from [their] first payment. It could be less, but not longer." *Id.* at NLSS_000039. Clearly, this evidence supports Plaintiffs' argument that the damages could not have actually accrued until the 48-month period had run from the time of each Plaintiff's first payment. Defendant argues in its papers that this Welcome Packet evidence was not alleged in the Amended Complaint. However, Defendant filed a motion for summary judgment, and the Court can clearly review evidence that was not within the four corners of the Amended Complaint at the summary judgment stage.

Viewing the evidence and all reasonable factual inferences in the light most favorable to Plaintiffs, it is clear that the Motion should be denied. There are issues of genuine material fact as to when the statute of limitations began to run with regard to Count I.  This matter must be resolved at trial.

## VI.    CONCLUSION

In light of the foregoing, the undersigned United States Magistrate Judge **RECOMMENDS** that Defendant, GM Law Firm, LLC's Motion for Summary Judgment as to Count I [DE 240] be DENIED for the reasons stated in this Report and Recommendation.

### NOTICE OF RIGHT TO OBJECT

In light of the upcoming pretrial deadlines and in light of the language contained in Federal Rule of Civil Procedure 1, the Undersigned shall hereby shorten the time for the parties to file objections to this Report and Recommendation, as authorized under Southern District of Florida Magistrate Judge Rule 4(b). Accordingly, the parties shall have seven (7) calendar days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with United States District Judge Raag Singhal. Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1.

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Florida, this 13th day of December 2023.

WILLIAM MATTHEWMAN
United States Magistrate Judge